HARRIETTE A. INGRAHAM et al.

v.

EPHRAIM MARINER et al.

*Opinion filed December 18, 1901—Rehearing denied February 11, 1902.*

1. CONTRACTS—*when contract creates an interest in land.* A contract made by the owner of land with a second party with the object of putting the land on the market, which provides that the second party, "being desirous of taking an interest in the land," agrees to do certain things and receive one-half of the net profits of the sale, but if he defaults he "forfeits all interest in the described lands," creates an equitable interest in the land in favor of the second party and his assigns, in the nature of a lien to secure their interest in such profits.

2. SAME—*how to ascertain profits of joint enterprise.* To ascertain the profits of a joint enterprise it is necessary to deduct the debts and liabilities of the parties and all advances made by either of them and all capital belonging to them; and they may agree that the capital shall bear interest, and that subsequent advances shall bear interest and become a part of the capital.

3. SAME—*what shall constitute the capital to be deducted must be determined from whole contract.* The intention of the parties to a joint enterprise for the sale of land as to what shall constitute the capital to be deducted in arriving at the profits, is to be determined by a construction of all the provisions of the contract.

4. SAME—*construction—vague, general conversations do not amount to "acts and conduct."* The acts and conduct of the parties indicating the construction placed by them on their written agreement may be considered in determining the true meaning of the contract, but vague, general conversations between the parties in regard to what they meant by it do not amount to "acts and conduct."

5. EQUITY—*equity will protect interests in land distinct from the legal ownership.* Where there are rights and interests in property, or its proceeds, distinct from the legal ownership, the same constitute a trust or equity, which a court of equity will protect or enforce when its aid for that purpose is properly invoked.

6. PARTITION—*party may be estopped to ask partition.* Equity will not award partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed upon the estate by one through whom he claims.

7. SAME—*when equity will not grant partition.* Equity will not grant partition where the parties are entitled to a portion of certain profits which can only be ascertained after a sale of the property and the deduction, from the proceeds of the sale, of the capital invested, liabilities, expenses and interest.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is an appeal from a decree of the circuit court of Cook county, entered on the 6th day of July, 1900, denying partition of the property described in the bill, and directing a sale thereof, and a division of the proceeds in the manner and proportion therein mentioned, but with a provision that, in view of a stipulation between the parties to the effect that the best time for the sale of the land had not yet arrived, the sale should not be made by the master until the further order of the court, and upon application of some of the parties in interest, showing that they could not agree between themselves upon the time of the sale, and were themselves unable to make the sale.

The original bill in the case was filed on May 4, 1898, by appellants Harriette A. Ingraham, Henry V. Freeman and John F. Gilchrist, suing as executors and trustees under the last will of Granville S. Ingraham, deceased, against the appellees, Ephraim Mariner, J. Platt Underwood, John M. Gartside and the devisees and legatees under the will of Granville S. Ingraham, deceased, and certain persons interested in the note for $30,000.00, and the trust deed securing the same hereinafter mentioned, praying therein for an accounting and for the establishment of the rights of the complainants in the bill, and of Mariner, Underwood and Gartside, and for partition of the premises described in the bill, namely, the east half of the north-east quarter, and the north twenty acres of the east half of the south-east quarter of section 33, township 38 north range 14 east, etc., in Chicago, being one hundred acres of land lying south of and adjoining Seventy-ninth street, and west of State street in said city.

The main object of the bill is to construe an agreement, made on January 2, 1889, between the said Granville

S. Ingraham and one Andrew J. Cooper, both residing in Chicago, which agreement is as follows:

1. "This article of agreement, made this second day of January, 1889, between Granville S. Ingraham of Hyde Park, Cook county, State of Illinois, of the first part, and A. J. Cooper, of the same place, of the second part.

· 2. "*Witnesseth:* The said Granville S. Ingraham owns one hundred acres of land, be the same more or less, all of which he puts in as capital stock at $1000.00 per acre, making the stock capital $100,000.00. The said land is situated in section 33, township 38, range 14, third principal meridian. It is bounded on the north by Seventy-ninth street, on the west by Wentworth avenue, on the east by State street, and on the south by Eighty-fourth street.

3. "The said A. J. Cooper, of the second part, being desirous of taking an interest in said land, agrees to make a loan of $30,-000.00 (thirty thousand dollars) at his own expense; also agrees to pay the interest on said loan and six per cent on balance of capital stock to the said Granville S. Ingraham; the six per cent on the balance is not required to be paid until the sale of said land; then that amount to be added to the capital stock.

4. "Said Ingraham agrees that said loan may be placed on the above described land, and in default of the payment of interest on said loan when due being made by said A. J. Cooper of the second part, he (A. J. Cooper) forfeits all interest in said described land.

5. "All taxes or expenses paid by either party shall also draw six per cent interest; and be it further understood that there shall be no commission charged for selling or looking after said land.

6. "It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties.

7. "The said Ingraham of the first part agrees to give said Cooper of the second part half of the profits after adding all the expenses and interest to the $1000.00 (one thousand dollars) per acre of said land.

8. "Be it further agreed that the $30,000.00 loan and interest on said loan shall be paid whenever said land shall be sold.

9. "We further agree to each pay half of the two and one-half per cent commission on the $30,000.00 loan, to be adjusted when the property shall be sold.

"Dated Hyde Park, Jan. 2, '89.      G. S. INGRAHAM,
                                     A. J. COOPER."

On January 31, 1899, Mariner, Underwood and Gartside filed an answer to the original bill. On the same day they filed a cross-bill, asking for the construction of said contract and that the rights of the parties thereunder be determined and established, and that the premises be declared to be held in trust by the executors and trustees under the will of Granville S. Ingraham, deceased, and that an officer be appointed to execute such trust under the direction of the court, directing a sale whenever most advantageous to the parties in interest, and that the suit be ordered to be retained by the court for the purpose of administering the trust and completing its execution, and that a disposition be made of the proceeds of the property, when sold, in accordance with equity and the provisions of the contract, and for further relief, etc.

On March 2, 1899, the complainants below filed an amendment to the original bill and therein prayed that the court would determine whether, under said contract, Mariner, Underwood and Gartside acquired anything more than a contingent claim against the estate of Granville S. Ingraham which had become barred except as to newly discovered assets, and whether they have any interest in said land, or proceeds of the sale thereof; or whether any trust is created by said contract; and if the court determines that a trust exists, that it may decree execution of the same; or if the court determines that said Mariner, Underwood and Gartside are equitable owners of any undivided interest in said land, that partition may be decreed. The amended bill prays that, if there be a trust, the same may be executed and a sale of the lands ordered, and if Mariner, Underwood and Gartside have no claim or charge on the land, that the court so declare, and declare the contract to be a cloud.

On March 2, 1899, the executors of the estate of G. S. Ingraham, deceased, filed an answer to the cross-bill.

There was a reference to a master in chancery on March 7, 1900. The master filed his report, dated February 13, 1900, to which objections were filed and overruled and ordered to stand as exceptions to the report. On July 6, 1900, a final decree was rendered substantially confirming the master's report.

The material facts in the case, as ascertained from the pleadings, the proofs taken before the master, and from the master's report and the decree entered, are substantially as follows:

Granville S. Ingraham was the owner in fee of the whole of the one hundred acres described in the contract at the date of its execution. When he executed the contract, and subsequently thereto up to the time of his death, he was in feeble health. The loan of $30,000.00 was obtained by Cooper, and the money was paid to Ingraham. To secure its payment Ingraham executed his note for $30,000.00, dated January 2, 1889, due in three years with six per cent interest payable semi-annually, said note, and the interest coupons thereto attached, being payable to the order of Darius N. Avery, executor of the estate of George Fuller, deceased; and, to secure said note, Ingraham and his wife executed a trust deed on said land to Walter W. Augur. The note was extended when it became due on January 2, 1892, and was afterwards extended from time to time. Cooper paid the interest upon the note for $30,000.00 until he assigned or sold his interest in the contract, and his assignees, hereinafter named, paid the interest down to January 2, 1900. At the latter date, Mariner and Underwood, on behalf of all the assignees, bought up and now hold the principal note for $30,000.00, and, in addition, paid an attorney's fee, claimed by the holders of the note.

On December 20, 1892, Ingraham died testate, and his will was admitted to probate in the probate court of Cook county, and the complainants in the bill below were appointed and qualified as executors. Original and

supplemental inventories of the property, belonging to
the estate, were filed on January 4, 1894, and January 18,
1897, and therein the premises named in the contract,
of which Ingraham was the owner when he died, were
described.

On June 12, 1891, Cooper assigned and conveyed all
his interest in said contract to the appellees Mariner,
Underwood and Gartside by deed and written agreement.
Upon the death of Ingraham the legal title vested in his
executors and trustees. Moneys were paid by Ingraham
in his lifetime, and by his executors and trustees after
his death, for taxes upon and expenses in reference to
said land. Some taxes and expenses were also paid by
Mariner, Underwood and Gartside.

The final decree of the court finds, that the parties
have performed the contract, but that, until the land is
sold, it is impossible to state any accounting between
them; that, at date of contract, Ingraham owned the
land which was valued by the parties at $100,000.00; that
it was the intention of Ingraham and Cooper by the con-
tract to enter into a joint enterprise in regard to said
land, in which it was valued at $100.000.00, for the pur-
pose of capitalizing the same; that Ingraham's interest
therein should be $70,000.00, and Cooper's interest there-
in, upon the payment of said $30,000.00 unto Ingraham,
should be $30,000.00; that the land should be carried at
joint expense until the parties should agree upon the
proper time to sell the same; that Cooper was to keep
the interest on the loan for $30,000.00 paid under penalty
of forfeiting his interest; that the principal of the loan
should be carried until the sale of the land should be
made, when it should be paid out of Cooper's share of
the proceeds; that upon sale for purposes of distribution
there should be added to the principal of $70,000.00 con-
tributed by Ingraham, and to the principal of $30,000.00
contributed by Cooper, all expenses, including the taxes,
etc., with interest at six per cent per annum, and also in-

terest at the same rate upon said $70,000.00 down to date
of sale, and all interest paid on said loan of $30,000.00
by Cooper, Mariner, Underwood and Gartside, until same
was taken up, and at the rate of six per cent thereafter
down to date of sale, all of which being added together,
should constitute amount of principal at the date of the
sale; that, upon the sale, there should be deducted from
the proceeds thereof said principal, including interest,
taxes and expenses, and the remainder should be profits
and be divided equally between Ingraham or his execu-
tors, and Cooper or his assigns; that, after the distri-
bution of the profits, the principal should be divided as
follows: there should be paid to Ingraham $70,000.00,
with interest at six per cent per annum down to date of
sale, and all taxes and expenses paid by him with inter-
est on the same at six per cent per annum; that there
should be paid to the holder of the note for $30,000.00,
and, if the same should be taken up by Cooper or his rep-·
resentatives, then there should be paid to the then owner
out of the principal so constituted, the sum of $30,000.00
with all interest paid thereon by Cooper or his assigns
since the date thereof down to the time when it was taken
up by Mariner, Underwood and Gartside, and all accrued
interest thereafter down to the date of sale at six per
cent per annum, and also pay to them all taxes, expenses,
etc., paid by them, with six per cent per annum thereon;
that, in case there should be no profits but a loss, the
loss should be borne *pro rata* according to the amount
contributed by each of the parties; that there has been
no attempt to declare a forfeiture against Cooper or his
assigns; that Cooper and his assigns had the right, upon
the maturity of the note, to take the same up, and that
his assigns did take the same up on January 2, 1900; that
all interest thereon has been fully paid by Cooper or his
assigns; that the interest of Cooper's assigns in the land
is a joint interest with the executors and trustees of In-
graham, and is of a nature that is not properly suscepti-

ble of partition; that the rights of the parties and their interests can only be determined upon a sale; that the said assignees of Cooper are entitled to all the right and interest which he would have had, had no assignment been made; that no claim has ever been presented by Cooper or his assigns against said estate to the probate court, although more than two years have elapsed.

The decree orders that the premises be sold at public auction for one-third cash and the balance in one, two and three years, etc., by the master, and that the sale be postponed in accordance with the stipulation of the parties as above stated. The present appeal is prosecuted from the decree so entered on July 6, 1900.

OTIS & GRAVES, for appellants.

PENCE & CARPENTER, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The decree of the court below is claimed by the appellants to be erroneous in holding, that Cooper and his assigns had an interest in the land mentioned in the contract under and by virtue of the terms thereof. Appellants claim, that the contract was a personal one between Ingraham and Cooper for the payment of a sum of money to be determined by the amount of the sale. It is contended that the claim, being thus a contingent personal claim for money against Granville S. Ingraham, and not having been presented against his estate within two years after the date of letters testamentary, was barred, and could only be paid out of newly discovered assets.

The character of the transaction is stamped, in such cases as this, by the intention of the parties, and that intention must be determined from the terms of the contract itself. (*Morrill* v. *Colehour,* 82 Ill. 618). The third section of the contract begins as follows: "The said A. J.

Cooper, of the second part, being desirous of taking an interest in said land, agrees," etc. The fourth section of the contract contains these words: "In default of the payment of interest on said loan when due being made by said A. J. Cooper of the second part, he (A. J. Cooper) forfeits all interest in said described land." The contract itself uses such language, as to convey the idea that Cooper was to take an interest in the land. Although his interest was only to be a share of the profits, yet that share was to be his by virtue of his desire to take an interest in the land. Upon his failure to pay certain interest, he was to forfeit all his interest in said lands; and it is difficult to see how he could forfeit an interest, unless it was intended that the contract should confer upon him an interest.

It may not be necessary to determine, nor is it material, what the precise nature of the interest taken by him under the contract was. It may not have been strictly a partnership interest, or the interest of a beneficiary in a trust, but it was such an equitable interest in Cooper and his assigns, as gave them the right to have the property sold in order to establish their rights. Cooper certainly had a beneficial interest in the proceeds of the land, and that interest would attach to the net profits arising upon the sale of the property. His interest in the proceeds and the profits constituted a lien or charge upon the land, so that the appellees had a right to file a bill to compel a sale. (*Smith* v. *Gear*, 59 Ill. 381; *Barling* v. *Peters*, 131 id. 78.) Where there are rights and interests in the property, or its proceeds, distinct from the legal ownership, the same constitute a trust or equity, which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. The appellants, in their amended bill, ask that there may be a partition of the property, or, if it be a trust, that the trust may be executed and a sale of the land ordered. The very fact, that the appellants ask for a partition of the property, is

a confession that the appellees have an interest in the
land.    Therefore, we do not regard the decree as errone-
ous in the respect thus indicated:

*Second*—It is claimed, that the decree is erroneous in
directing that the interest on the $70,000.00 of capital,
belonging to Ingraham, should be paid by Cooper or his
assigns out of the proceeds of the sale of the land.   It is
claimed that, by the terms of the contract, Cooper him-
self agreed to pay to Ingraham the interest on the $70,-
000.00 from his own share of the profits, when the land
should be sold.    Whether or not this contention on the
part of the appellants is correct depends upon the con-
struction of the words of the contract.

In order to ascertain the profits of a joint enterprise,
it is necessary first to deduct the debts and liabilities of
the parties, and all advances made by either of them, and
all capital belonging to them; and the remainder will con-
stitute the profits. (1 Lindley on Partnership,—4th ed.—
p. 806.)   The parties in such joint enterprise may agree
that the capital may bear interest, and that subsequent
advances in conducting the business may also bear in-
terest, and become a part of the capital.

In the case at bar, the intention of the parties, as to
what should constitute the capital to be withdrawn be-
fore the profits should be arrived at, must be determined
by a construction of all the provisions of the contract.
"A written contract should be read as a whole.    *    *    *
A single sentence should not be construed alone, but
should be construed with reference to the context.    The
construction should make the whole consistent, giving
all parts their due weight.    Force and effect should be·
given to all the words employed by the parties where
that is possible.    And one part of the agreement may
be resorted to to explain the meaning of the language or
expressions of another part." (1 Beach on the Mod. Law
of Contracts, sec. 711).   If this rule of construction be
applied to the present contract, it will be found that

the decree is not erroneous in requiring the $70,000.00 of capital and interest thereon at six per cent down to the day of sale to be deducted from the total proceeds of sale, in order to arrive at the amount of profits.

By the terms of the third paragraph of the contract, Cooper agrees to pay "six per cent on balance of capital stock to the said Granville S. Ingraham; the six per cent on the balance is not required to be paid until the sale of said land; then that amount to be added to the capital stock." The balance here referred to is the $70,000.00, which remained after deducting $30,000.00 from the capital stock of $100,000.00. Ingraham was to have the $70,-000.00 and six per cent interest thereon down to the date of the sale. The six per cent upon the $70,000.00, however, was not to be paid until the sale was made. Then that amount, that is to say, the six per cent interest on the $70,000.00, was to be added to the capital stock. The contract thus provides that the interest on the $70,000.00 shall be added to the capital stock, and thereby constitute a part of the capital stock. If, therefore, the capital of the joint enterprise is to be deducted in order to reach a remainder which shall constitute profits, then the six per cent interest on the $70,000.00 is to be deducted, as well as the principal sum of $70,000.00.

*Third*—It is furthermore contended by the appellants, that the decree is erroneous in directing that all interest on the $30,000.00, which has been paid by Cooper and his assignees, should be re-paid to the appellees out of the proceeds of the sale. We are inclined to think that the decree is erroneous in this respect.

Ingraham was himself the owner of the one hundred acres in question. No part of it was paid for or owned by Cooper, or his assigns. The $30,000.00, which was raised, was so raised by a mortgage upon the property, executed by Ingraham, securing a note also executed by Ingraham. Cooper did not sign the note or the mortgage. It was Ingraham's property, which was pledged as se-

curity for the loan. Counsel are mistaken when they say that $30,000.00 was the portion of the capital contributed by Cooper. Cooper contributed no capital at all. He performed the service for Ingraham of obtaining for him a loan of $30,000.00 upon Ingraham's property. By the ninth section of the contract, even one-half of the commissions upon this loan was to be paid by Ingraham or his estate, when the property should be sold. The testimony shows, that the one hundred acres were worth at least $100,000.00 when the contract was made on January 2, 1889. It was anticipated by the parties that the land would be worth at least $400,000.00 when the time for the sale of it should arrive. The testimony tends to show, that, at the time of the hearing before the master in this case, the property was worth some $250,000.00 or $300,000.00. It is impossible to believe, that Ingraham intended to give to Cooper one-half of the large profits, which would thus be realized from the sale of his own property, for no other consideration than the obtaining of a loan of $30,000.00 upon that property. Such a construction of the contract would be unreasonable.

Accordingly, we find that, in section 3 of the contract, Cooper "agrees to make a loan of $30,000.00 (thirty thousand dollars) at his own expense; also agrees to pay the interest on said loan." The loan was actually made to run for three years at six per cent interest, payable semi-annually. The amount of it, $30,000.00 was paid to and used by Ingraham. Cooper agreed to pay $900.00 every six months, or $1800.00 a year, the interest upon the $30,000.00, not as a contribution to the capital stock, but as a consideration for the half interest, which he was to have in the profits. This is manifest from a construction of all the words of the contract, and a comparison of the different clauses thereof with each other. In section 3, the six per cent upon the $70,000.00 is to be added to the capital stock, but the six per cent upon the $30,000.00 loan is not required to be added to the capital stock.

Again, section 4 provides that, "in default of the payment of interest on said loan [of $30,000.00] when due being made by said A. J. Cooper of the second part, he (A. J. Cooper) forfeits all interest in said described land." The obligation to pay the installments of interest when due upon the $30,000.00 was thus assumed by Cooper. He was to pay the interest upon the $30,000.00 out of his own funds, and such interest was not to be paid, as in the case of the interest upon the $70,000.00, out of the proceeds upon the sale of the property. If Cooper did not pay it promptly as it fell due, he was to forfeit his interest in the land.

The contract itself provides how the profits are to be ascertained. Paragraph 7 of the contract states that Ingraham "agrees to give said Cooper of the second part half of the profits after adding all the expenses and interest to the $1000.00 (one thousand dollars) per acre of said land," that is to say, to the capital stock of $100,-000.00. Counsel for appellees say that the word "interest," as here used, includes interest upon the $30,000.00, as well as interest upon the $70,000.00. We cannot concur in this view. Several different kinds of interest are referred to in the contract; six per cent interest on $30,-000.00, six per cent interest on $70,000.00, six per cent interest on the taxes and expenses. The word, "interest," as used in section 7, refers back to the interest on the $70,000.00 mentioned in section 3, which was to be added to the capital stock. It has no reference to interest upon the loan of $30,000.00. It does not refer, as is contended by counsel for appellants, to the interest on taxes and expenses. It is true, that section 5 provides that the taxes or expenses paid by either party shall draw six per cent interest, but the word "expenses," as used in section 7, includes the taxes and expenses and interest thereon, referred to in section 5. The interest, mentioned in section 7, is plainly the interest, which is to be added to the $100,000.00; and the interest, which was to be

added to the $100,000.00, is stated to be in section 3 the interest upon the balance of the capital stock, to-wit, $70,000.00. Counsel for appellees, however, say that section 8 provides, that "the $30,000.00 loan and interest on said loan shall be paid whenever said land shall be sold," and that this section means that all the interest on the $30,000.00 loan is to be paid out of the proceeds of sale. This cannot be so, because, by the terms of section 3, Cooper agreed to pay the interest on the $30,000.00, and, by the terms of section 4, he agreed to pay that interest when due, and, in default of such payment, to forfeit all his interest in the land. The construction contended for would make section 8 inconsistent with sections 3 and 4. Section 8 provides for the payment of interest on the $30,000.00 whenever the land shall be sold, but does not provide that the advances to pay interest, previously made by Cooper, shall be refunded to him. The word "interest" in section 8 merely refers to such interest as has accrued since the last installment of interest was paid, and which has not yet become due, or the non-payment of which has not operated to forfeit the contract. We are, therefore, of the opinion that, while the $30,000.00 should be taken out of the proceeds of the sale before a division of the profits, yet the interest, paid by Cooper and his assignees, should not be taken out of such proceeds. In this regard the decree is erroneous.

It appears that, since this suit was begun, and during its pendency before the master for the purpose of taking proof, the assignees of Cooper have paid or bought up the $30,000.00 mortgage, so that thereafter they were not obliged to pay interest to a third person holding the mortgage. The interest due upon the mortgage was due to themselves; but this makes no difference in the right of the appellants to have the proceeds of the sale protected from any deduction on account of such interest.

In order to determine the amount of the profits, which are to be divided between these parties, there should be

deducted from the proceeds of the sale, *first*, the principal of the mortgage, amounting to $30,000.00, and the current interest due thereon between the date of the maturity of the last installment of interest and the date of the sale; *second*, $70,000.00, balance of the capital stock, and interest at six per cent thereon from the date of the contract to the date of the sale; *third*, taxes and expenses paid by Ingraham, and interest at six per cent thereon from the time of payment up to the day of sale; *fourth*, taxes and expenses, if any, paid by Cooper or his assignees, and interest thereon at six per cent from the time of payment up to the date of sale. After deducting these amounts, the remainder will be the profits which are to be divided between the parties. The deductions so to be made, in order to reach the amount of the profits, are to be distributed as follows: to the holders of the note and mortgage, $30,000.00 and interest thereon since the maturity of the last installment of interest; to the estate of Ingraham, $70,000.00 and six per cent interest thereon up to the date of sale; also to said estate the taxes and expenses paid by Ingraham or his representatives, and interest thereon up to the date of sale; and to the appellees, such taxes and expenses, with interest at six per cent, as they have paid out.

*Fourth*—It is claimed by the appellees, that there is an ambiguity in the contract, so that its meaning is doubtful, and that, therefore, it was proper to introduce extrinsic evidence, showing a construction of the contract by the parties themselves. The contract, when considered as a whole, is not sufficiently ambiguous or uncertain in its meaning to require any resort to extrinsic evidence. If this were not so, however, the evidence, which was introduced, does not have the effect of changing the construction, already given to the contract in the observations heretofore made.

Undoubtedly the acts of the parties themselves, indicating the construction placed by them upon their written

agreement, may be resorted to for the purpose of determining the true meaning of such agreement, and it makes no difference whether such acts are contemporaneous or subsequent. (*Street* v. *Chicago Wharfing Co.* 157 Ill. 605). But the acts and conduct of the parties, and not some vague general conversation between them in regard to what they meant by the contract, must be looked to in order to determine its meaning. (*Hall* v. *First Nat. Bank of Emporia,* 133 Ill. 234; 1 Beach on the Mod. Law of Contracts, sec. 721). Here, Cooper, and one of his assignees, and an attorney who was in the habit of attending to his business, were introduced as witnesses to testify to a conversation, alleged to have taken place between Ingraham and Cooper and the last named assignee in the lifetime of Ingraham. It is said that, in this conversation, Cooper claimed that he was to have back the interest, which he should pay upon the $30,000.00, out of the proceeds of sale when the property should be sold, and that Ingraham demurred to this construction, but finally, upon being urged and pressed by Cooper, assented to it. The evidence of this conversation does not bear the marks of reliability in all respects. Cooper and his assignee were evidently interested parties, and their evidence was incompetent in this proceeding to which the executors of a deceased person are parties. The evidence shows, that the assignment by Cooper to the appellees was made on June 12, 1891; and, by their testimony, these witnesses attempted to show that the conversation with Ingraham was held prior to and about that time; and it is claimed that it was so held for the purpose of satisfying appellees, before they should buy the contract, that Cooper's construction of it was the same as the construction placed upon it by Ingraham, that is to say, that the interest on the $30,000.00 was to be refunded to Cooper out of the proceeds of the sale. Clearly, these witnesses were mistaken in regard to the date of the conversation, if any such conversation ever took place, because the evidence

is quite clear that, at the date mentioned by them, Ingraham was at Pass Christian in Mississippi in a precarious state of health.    The proof shows, that he went there in November, 1890, and was there until August, 1891.    It is shown conclusively, that the conversation was not held before the assignment of the contract by Cooper to the appellees.    Cooper, upon his being re-called, finally admitted that the conversation was held in October, 1891, but this was after the assignment had been made, and, therefore, no declaration on the subject by Ingraham at that time could have induced the appellees to accept the assignment.    The attorney, who testifies, evidently does not refer to the same conversation that is spoken of by the other witnesses.    He says that Ingraham and Cooper and some of the others came into his office, not to consult him as attorney, but for the purpose of talking with each other, and that he heard them say certain things.    The conversation, however, which he professes to testify to, occurred, as he says, ten years before he gave his testimony, and in reference to a matter, in which he had no interest, either as attorney, or otherwise.    He is not able to say at what time it occurred, but states that it was several years before the death of Ingraham, which was on December 20, 1892.    He admits that his recollection is not as perfect as it used to be.    The evidence introduced is not sufficiently definite and specific to entitle it to much weight.    Nor does it establish any circumstances, which come within the doctrine that a written agreement may be construed by the subsequent acts and conduct of the parties thereto.

There was no error in the decree of the court below in refusing to grant a decree making partition of the property.    It is true that parties, who have definite and fixed interests, as tenants in common in property, are entitled under the law to partition, but such is not the case, where it is uncertain what estate either party will be entitled to in the end.    Here, the parties are entitled

each to one-half of certain profits, which can only be determined after a sale of the property, and by a deduction of the capital invested and interest, and liabilities, and expenses and interest from the proceeds of sale. In addition to this, the present contract amounts substantially to an agreement between the parties that there shall not be a partition of the property. Section 6 of the contract provides as follows: "It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties." This amounts to an implied understanding, that the property should be sold when both parties should regard it as advantageous to sell it, and is inconsistent with the idea that there should be a partition of the land itself between the parties. "Equity will not award a partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed upon the estate by one through whom he claims. The objection to partition in such cases is in the nature of an estoppel." (*Hill* v. *Reno*, 112 Ill. 154.) "An agreement not to partition, though not expressed, would be readily implied and enforced if such implication proved necessary to secure the fulfillment of the agreement." (*Bissell* v. *Peirce*, 184 Ill. 60). Here, partition was properly refused, because the contract shows a joint enterprise in the nature of a partnership, and neither the rights of Ingraham, nor of Cooper or his assigns, could be ascertained until the property was sold and the debts were paid and the profits were determined; and because of the implied agreement, that there should not be a partition of the land.

The decree of the court below is affirmed in all respects, except so far as it allows the interest paid by Cooper and his assignees upon the $30,000.00 to be deducted from the proceeds of sale. In this respect the decree is reversed, and the costs will be equally divided between the parties, each to pay one-half.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court with directions to change and modify its decree in the respect hereinbefore indicated.

*Partly affirmed and partly reversed.*

This case was originally assigned to the late Justice PHILLIPS, but, as he prepared no opinion, the case has been re-assigned since his death.