LUCINDA W. MARINER *et al.* Plaintiffs in Error, *vs.* HAR-
RIET A. INGRAHAM *et al.* Defendants in Error.

*Opinion filed June 21, 1912—Rehearing denied October 2, 1912.*

RES JUDICATA—*what is not forbidden by the doctrine of res
judicata.* Where a decree in a suit to settle a land partnership
finds that certain parties are entitled to be paid a specific sum of
money representing a mortgage indebtedness paid by them, but
also finds that the parties are all liable for their *pro rata* share of
the losses, if any, in the enterprise, it is not a violation of the
doctrine of *res judicata* for the trial court, in entering a subse-
quent decree referring the cause to a master to ascertain the losses
and the amounts due from the respective parties, to hold said spe-
cific sum of money in its custody until the rights of the parties
are fully and finally adjusted.

WRIT OF ERROR to the Branch "C" Appellate Court for
the First District;—heard in that court on appeal from
the Circuit Court of Cook county; the Hon. LOCKWOOD
HONORE, Judge, presiding.

FRANK H. SCOTT, EDGAR A. BANCROFT, REDMOND D.
STEPHENS, and JOHN E. MACLEISH, for plaintiffs in error.

E. A. OTIS, WILLIAM K. OTIS, and DAVID FALES, for
defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On January 2, 1889, Granville S. Ingraham, being the
owner of one hundred acres of land in the south part of
Chicago, entered into a contract with A. J. Cooper. The
effect of the contract was to create a relation between the
parties somewhat in the nature of a partnership, of which
the one hundred acres of land constituted the capital, the
value of which was fixed by the agreement at $100,000.
The object of the agreement was to sell the land, and any
amount obtained above $100,000 and carrying expenses un-
til the sale, including interest on $70,000, would consti-

tute the profits of the enterprise. This agreement is set out at large in *Ingraham* v. *Mariner,* 194 Ill. 269, and again in *Mariner* v. *Ingraham,* 230 id. 130. Ingraham having died before the lands were disposed of, his executors filed a bill for the purpose of obtaining à construction of the agreement and for an order of sale of the premises. A decree was entered on this bill, from which an appeal was prosecuted to this court. The decree was affirmed in all respects except in one particular not necessary here to be stated. (*Ingraham* v. *Mariner, supra.*) In that case it was held that the effect of the agreement was to give Cooper an equitable interest in the one hundred acres of land but not such an interest as would warrant a decree for partition, and the prayer of the bill for that purpose was denied. It was, however, held that it was necessary, in order to adjust the interests of the parties, that the land should be sold, and a decree was accordingly entered for that purpose. It was provided that the sale should not be made until the further order of the court, which might be. made by consent of parties or upon the petition of either, and a hearing as to the advisability of selling at a particular time. In other words, the time when the sale should occur was reserved by the decree for future determination. The mandate of this court reversing the decree of 1900, which was the date of the decree herein referred to, was filed in the circuit court, and on April 15, 1902, the circuit court entered a decree modifying its former decree in accordance with the direction of this court. The cause rested in this situation upon an order of sale at some time to be determined in the future, until April 9, 1904, when the executors under the Ingraham will presented a petition to the circuit court praying that the court would fix a time and make an unconditional order of sale. The petition also prayed for an order permitting either of the parties to become purchasers, and to allow the purchaser, in case either party in interest should bid off the premises, to deposit a

receipt for the amount of his interest instead of paying the money into court, and also for an order allowing the purchaser, in case he elected to do so, to pay the whole of the purchase money in cash instead of paying one-third cash and the remainder in one, two and three years, as was provided in the decree of 1900. A hearing was had upon the petition, resulting in a decree entered March 22, 1905, ordering the master, within six months from the date of the decree, to advertise and sell the land at public auction to the highest bidder; also allowing the privilege of paying the purchase money in full, and giving the parties in interest the privilege, in case they became the purchasers of the premises, to deposit a receipt representing the amount of the interest of such purchasers with the master and directing that he should receive such receipt for the amount thereof in cash. From this decree an appeal was prosecuted to the Appellate Court and it was there affirmed, and a further appeal to this court resulted the same way. *Mariner* v. *Ingraham, supra.*

Under the provisions of the original contract between Ingraham and Cooper, Cooper agreed at his own expense to procure a loan of $30,000, to be secured by a mortgage upon the one hundred acres of land. Cooper agreed to pay the interest on the $30,000 loan until the lands were sold. It was also agreed by the original contract that when the lands were sold the proceeds should be applied to the payment of the $30,000 loan and $1000 per acre for seventy acres of the land, and six per cent interest thereon and all expenses, and that the balance should be regarded as profits and divided equally between Ingraham and Cooper. Cooper procured the loan of $30,000 and paid the interest thereon until he assigned all of his interest in the enterprise to Mariner, Underwood and Gartside. Mariner and Underwood paid the $30,000 mortgage and took an assignment to themselves. After the assignment of the mortgage to the parties liable to pay the interest, the interest on

the $30,000, of course, was not paid. After the affirmance
by this court of the decree of 1905 the master in chancery
advertised the one hundred acres of land for sale, and it
was sold to the executors of Ingraham's will for $95,000.
They paid into court $30,000 in cash and deposited a re-
ceipt for the balance of the purchase price. After the sale
it was ascertained that there were no profits to be divided,
but, instead, a loss of about $168,000. After the sale was
approved the executors made a motion to refer the cause
to a master in chancery to state the account between the
parties, to ascertain the exact amount of the loss and the
portion to be paid by each party, and for an order directing
that the $30,000 paid in court be not paid to Mariner and
Underwood until the accounting was had and the rights of
the parties finally adjusted. Numerous objections were in-
terposed by Mariner and Underwood to this motion, which
were overruled on May 24, 1909, when the following de-
cree was entered:

"This cause coming on to be heard this day on the
motion of the complainant, filed herein on the 20th of No-
vember, 1908, and the objection of said defendants, Mar-
iner and Underwood, thereto, and it appearing to the court
that there are no profits from the proceeds of sale of the
land described in the decree herein entered April 15, 1902,
to be distributed to the complainants or to the said defend-
ants, Ephraim Mariner, J. Platt Underwood and John M.
Gartside, or either thereof, but that a loss has resulted
from the sale of said land on October 1, 1908, by Hora-
tio L. Wait, Esq., master in chancery of this court, made
herein, which sale was heretofore confirmed, it is ordered
that said objections be overruled and that this cause be re-
ferred to Thomas Taylor, Jr., Esq., one of the masters in
chancery of this court, to take account between the com-
plainants and the defendants, Ephraim Mariner, J. Platt
Underwood and John M. Gartside, of the share or propor-
tion which each of them is entitled to receive out of the

proceeds of sale of the lands and premises in this cause; also of the indebtedness due from either of said parties, complainant or defendant, to the other, with respect to the contract set up and described in the bill of complaint in this cause. In taking said account the said master is hereby directed to proceed upon the basis that it has been found and decreed by the court in this cause that the capital of the said joint enterprise consisted of $100,000, of which Granville S. Ingraham, deceased, contributed $70,000 and Andrew J. Cooper contributed $30,000; that the complainants are the executors and trustees of the estate of said Granville S. Ingraham, now deceased, and have succeeded to his rights and liabilities, and that said Ephraim Mariner and J. Platt Underwood are the assignees and have succeeded to the rights and incurred the obligations of said Andrew J. Cooper under the original contract set out in the bill and the decrees in this cause, and that the said losses arising from said joint enterprise should be borne *pro rata* in proportion to the amount contributed by each of said parties, and he is instructed to make his report in accordance with the instructions embraced in this decree. It is further ordered that the proceeds of sale remaining in the hands of said master, Wait, be held until the coming in of said report and the further order of the court herein."

Plaintiffs in error contend that the court erred in entering the foregoing decree and that the Appellate Court erred in affirming the same.

It is first contended by plaintiffs in error that the court erred in directing an accounting, because, it is said, plaintiffs in error are not liable to share the losses upon the joint enterprise. By the decree of April 15, 1902, it was adjudged and decreed that the parties should bear any loss *pro rata* that might be sustained upon a sale of this property. The ruling of the court on that point was assigned as error in the consolidated case of *Mariner* v. *Ingraham, supra,* and in disposing of that question this court, on

page 137, said: "It is alleged that the decree of April 15, 1902, is erroneous in prescribing the order of payment in making distribution; that the provision that the parties should bear any loss *pro rata,* and the order allowing appellees to become purchasers at the sale, are also erroneous. A comparison of the decree of April 15, 1902, with that of July 6, 1900, shows that they are in all essential particulars identical except as to the provision concerning the payment of interest on the $30,000, which was modified in accordance with the mandate of this court. In prescribing the manner of distribution the decree follows the views expressed in *Ingraham* v. *Mariner, supra,* using the language of this court in substance. The expressions 'first,' 'second,' 'third' and 'fourth' at the beginning of the distributive clauses in the decree are mere enumerations of payments to be made and are not intended to give priority to any claim. The decree contemplates that all the items enumerated shall be paid in full if the proceeds of the sale shall afford sufficient funds, otherwise the losses shall be borne *pro rata.* The court committed no error in this particular." The question, therefore, of the liability of plaintiffs in error to pay their *pro rata* share of the losses is *res judicata* and not open for further consideration.

It is next insisted that even if the plaintiffs in error be liable to pay their *pro rata* share of losses the court erred in directing that the $30,000 paid into court be held within the custody of the court until the final accounting is had. In support of this contention it is pointed out that in the decree of March 22, 1905, the court directed the payment of the $30,000 to "Mariner and Underwood upon the confirmation of said sale and execution and delivery by them of a release and satisfaction of the same." It is said that the decree of 1905 containing the above direction having been affirmed by this court became final and determined the right of the plaintiffs in error to have the $30,000 paid to them upon the confirmation of the sale, and the doctrine of

255 — 8

*res judicata* is invoked in support of this contention. The doctrine of *res judicata* does not apply to the extent insisted upon by plaintiffs in error. The issue that was determined by the decree of 1905 in respect to the $30,000 was that it belonged to plaintiffs in error—in other words, it was their money. That question was settled by the decree and their right and title to the money cannot again be called in question. The direction in the decree to pay it to them upon the confirmation of the report of sale was not the determination of any issue between the parties but a mere direction of the court, which would necessarily follow from the determination that they were entitled to the $30,000. If the court had made an order which in any way deprived the plaintiffs in error of the benefit of the $30,000 there would be some force in their contention, but we cannot lend our assent to the contention that a modification of the decree as to the disposition of the funds within the control and jurisdiction of the court, so long as such modification does not change the rights of the parties to the funds, is within the doctrine of *res judicata*. If by retaining this fund in the custody of the court the matter of adjusting the accounts between the parties can be facilitated and the controversy brought to a more speedy determination, plaintiffs in error have no just cause to complain so long as they are not deprived of their right to the funds. If, after the account is stated, the court should direct the master to pay out of said funds obligations resting upon plaintiffs in error by reason of their liability to pay a *pro rata* share of the losses sustained in this enterprise, such order would not deprive them of the full benefit of the funds. It was clearly within the power of the chancellor to retain this fund in the custody of the court until the rights of the parties were fully and finally adjudicated.

Plaintiffs in error contend that they are not liable, as assignees of A. J. Cooper, upon his covenants in the origi-

nal contract. It is said, even though Cooper might have been liable for his *pro rata* share of the losses, that plaintiffs in error, as assignees, are not liable unless it be shown that they expressly assumed such obligations. Mariner and Underwood were parties to the former proceeding. This question might have been raised in that proceeding as a defense. Whether it was or not, the decree in that case is conclusive of that question. They are liable under that decree for a *pro rata* share of the losses.

The decree of the circuit court and the judgment of the Appellate Court are affirmed.

*Judgment affirmed.*