(Nos. 11081-82.—Reversed and remanded.)

LUCINDA W. MARINER *et al.* Exrs., Plaintiffs in Error, *vs.* JOHN F. GILCHRIST, Exr., Defendant in Error.—JOHN F. GILCHRIST, Exr., Plaintiff in Error, *vs.* LUCINDA W. MARINER *et al.* Exrs., Defendants in Error.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. COSTS—*when costs of accounting before the master will be assumed to be legitimate.* In a partnership accounting before the master, where the record does not show what specific items entered into the matter of costs, it will be assumed in the Supreme Court, in the absence of any showing, that all the costs in the taking of the accounting are legitimate, and the parties should pay the costs in proportion to their interests.

2. PARTNERSHIP—*co-partners not required to account for interest on their share of the capital in case of loss.* Where two parties go together in the purchase and sale of certain land, entering into an agreement in the nature of a co-partnership, the losses of the enterprise are not debts from the one to the other but are firm obligations, and the co-partners are not required to account for interest on their share of the capital invested in the land when it is sold at a loss.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

LINES, SPOONER, ELLIS & QUARLES, and SCOTT, BANCROFT, MARTIN & STEPHENS, for Lucinda W. Mariner *et al.*

WILLIAM K. OTIS, for John F. Gilchrist.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The proceedings in this cause grow out of a contract executed on January 2, 1889, by Granville S. Ingraham and A. J. Cooper creating a relation between them in the nature of a co-partnership, in which one hundred acres of land, of the value of $100,000, constituted the capital. The con-

tract has been construed by this court and the respective rights of the parties thereto have been practically settled in three former decisions of this court, in two of which will be found the contract set out in full. *Ingraham* v. *Mariner*, 194 Ill. 269; *Mariner* v. *Ingraham*, 230 id. 130; *Same* v. *Same*, 255 id. 108.

The circuit court of Cook county by its decree of April 15, 1902, found that it was the intention of Ingraham and Cooper by said contract to enter into a joint enterprise, in the nature of a partnership, in regard to said land; that Ingraham's interest therein should be $70,000, and Cooper's interest therein, upon the payment of $30,000 to be loaned to said Ingraham on said land, should be $30,000; that the land should be carried at joint expense until the parties should agree upon the proper time to sell the same; that Cooper was to keep the interest on the loan for $30,000 paid, under penalty of forfeiting his interest; that the principal of the loan should be carried until the sale of the land should be made, when it should be paid out of Cooper's share of the proceeds; that in case of a sale of said land for a profit, after the distribution of the profits Ingraham should be paid $70,000, with interest at six per cent per annum to date of sale, and all taxes and expenses paid by him, with six per cent interest to date of sale; that there should be paid to the holder of the note for $30,000, now owned and held by the executors of Ephraim Mariner and J. Platt Underwood by reason of an assignment by said Cooper to Mariner and Underwood, the sum of $30,000, and interest thereon to date of sale, and from the maturity of the last installment of interest before the sale, together with all taxes and expenses paid by said Mariner and Underwood, assignees, and six per cent interest thereon to date of sale, and that in case of a loss the same should be borne *pro rata*, according to the amount contributed by each of the parties to the contract or their assignees. The decree further ordered that the premises be sold at public auction

280 – 35

for one-third cash and the balance in one, two and three years, etc., and that the sale be postponed until the further order of the court. The decree of the circuit court in the foregoing particulars is in accordance with the decrees and orders of this court. *Ingraham* v. *Mariner, supra; Mariner* v. *Ingraham,* 230 Ill. 130.

On March 22, 1905, the circuit court decreed that the sale of said land be made six months thereafter, and fixed special terms of the sale and of payment of the purchase money in case the premises were purchased by any of the parties in interest. Thereafter the master in chancery advertised and sold the land for $95,000 to the executors of Ingraham's will, and they paid into court $30,000 and deposited in court a receipt for the remaining purchase money.

On May 24, 1909, the circuit court entered a decree reciting that there are no profits from the proceeds of sale of said land and that it was sold at a loss; that the cause be referred to the master in chancery to take an account between the executor and surviving trustee of Ingraham and Mariner, J. Platt Underwood and John M. Gartside, of the share which each of them is entitled to receive out of the proceeds of the said sale and of the indebtedness due from either of said parties to the other with respect to the said contract concerning said land; that in taking said account the master is directed to proceed upon the basis that Ingraham contributed $70,000 capital and Cooper $30,000; that the executors and trustees of Ingraham's estate have succeeded to his rights and liabilities, and that Mariner and Underwood are the assignees and have succeeded to the rights and incurred the obligations of said Cooper under the original contract; that said losses arising from said joint enterprise should be borne *pro rata,* in proportion to the amount contributed by each of said parties, and the master was instructed to make his report in accordance with the instructions in the decree, and that the proceeds of said sale be held by the master until the further order of the

court. That decree was affirmed on appeal by the Appellate Court for the First District and by this court on a writ of error to the Appellate Court. *Mariner* v. *Ingraham*, 255 Ill. 108.

The decree now brought before this court for review states an account between the said parties interested in the proceeds of the sale of said land. The master first found that the total loss of the enterprise was $168,834.88. He found the total indebtedness of the enterprise to be: First, principal of the $30,000 incumbrance on the land, with six per cent interest from the last interest day to the date of sale, October 1, 1908, $30,450; second, capital contributed by Ingraham, $70,000, and six per cent interest from date of contract to date of sale, $82,903.34, making $152,903.34; third, taxes and assessments paid by Ingraham and executors, with six per cent interest thereon to date of sale, $86,870.82, less receipts collected from the property and six per cent interest thereon to date of sale, $8299.85, making $78,570.97; fourth, expenses paid by Mariner and Underwood, with six per cent interest from time of payment to date of sale, $1679.37; total indebtedness of enterprise October 1, 1908, the date of sale, $263,603.68. By deducting from the total liabilities the net proceeds of sale after deducting expenses of sale, $94,768.80, the master found the total loss of the enterprise to be as above stated. He further found that the decree of May 24, 1909, required Underwood and the executors of Mariner to bear thirty per cent of this loss, or $50,670.46, and that they were entitled to a credit of $1679.37 for expenses advanced by them, with interest, leaving as the net amount due .the Ingraham estate the sum of $48,971.09, and that said sum should bear interest at five per cent from December 21, 1908, to the date that decree should be entered, (July 14, 1914,) amounting to more than $14,000. The master allowed the last sum mentioned as interest, on his conclusion that the original contract was an instrument in writing

within the meaning of our statute on interest, section 2 of which provides: "Creditors shall be allowed to receive at the rate of five (5) percentum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing."

Objections were filed to the master's report by J. Platt Underwood and the executors of the estate of Ephraim Mariner, deceased, and were by the master overruled and exceptions taken. On final decree the court sustained the master in all things except the awarding of interest on the amount found due the Ingraham estate, and decreed that Underwood and the executors of Mariner should pay to the estate of Ingraham the said sum of $48,971.09 and the further sum of $597.87, master's and stenographer's fees paid by said estate, and that said amounts should bear interest at the legal rate from July 14, 1914; that upon satisfactory evidence of the payment of said sums, and interest, the master in chancery is ordered to pay to Underwood and the executors of Mariner all moneys and securities, and interest accrued thereon, remaining in his hands as part proceeds of the sale of said land,—*i. e.*, the $30,000 and whatever interest had accrued thereon by reason of any investment made therewith, less the reasonable costs and charges of the master; and that in default of said payment in fifty days the master is ordered to sell and convert the securities held by him by reason of said investment, at public or private sale, without notice, and, after deducting reasonable charges, to pay the remainder to the estate of said Ingraham in part satisfaction of the said several amounts decreed to be paid, etc. The executor of Ingraham excepted to the decree for its failure to allow interest on the said sum of $48,971.09. Underwood and the executors of Mariner excepted to the decree and appealed to the Appellate Court for the First District, in which court cross-errors were assigned by the executor of Ingraham. The Appellate Court affirmed the decree of the circuit court. Both of said par-

ties filed petitions for *certiorari* in this court, and both petitions were granted and writs of *certiorari* awarded.

Two causes are now pending in this court, one by Lucinda W. Mariner and John W. Mariner, executors of the estate of Ephraim Mariner, deceased, and J. Platt Underwood, as plaintiffs in error, against John F. Gilchrist, surviving executor and trustee under the will of Granville S. Ingraham, defendant in error, numbered 11081, and one by said John F. Gilchrist, surviving executor, etc., as plaintiff in error, against Lucinda W. Mariner and John W. Mariner, executors, and J. Platt Underwood, defendants in error, numbered 11082, to review the decree of the Appellate Court, and both of said causes have been consolidated for hearing in this court.

Plaintiffs in error in cause No. 11081, J. Platt Underwood and the executors of Mariner, by their assignments of error question the correctness of the decree of the circuit court in two particulars: (1) In treating the six per cent interest on the $70,000 capital of Ingraham and on the $30,000 capital of plaintiffs in error as losses or liabilities, to be paid by the parties *pro rata,* in proportion to the original amounts of capital, $70,000 and $30,000, respectively; and (2) in decreeing that said plaintiffs in error should pay the costs of the accounting, amounting to $597.87.

The first assignment of these plaintiffs in error is clearly sustained by the previous decisions of this court already referred to, and which are binding upon the parties to these proceedings and cannot be further questioned by either of them. By the decree of the circuit court of April 15, 1902, rendered in accordance with the decision of this court in *Ingraham* v. *Mariner, supra,* the six per cent interest on Ingraham's capital of $70,000 and the $450 interest on Cooper's $30,000 were only to be paid in case there was a profit, and Ingraham's six per cent interest was to be treated and paid as capital in addition to the $70,000 capi-

tal. In case of a loss the loss was to be borne *pro rata,* according to the amount contributed by each of the parties to the contract or their assignees. In the circuit court decree of May 24, 1909, also affirmed by this court, in the taking of said account the master was directed to proceed upon the basis that Ingraham had contributed $70,000 capital and Cooper $30,000 capital, for the purpose of determining the amount of losses to be borne by each of the parties. In the adjustment of losses it is clearly made manifest by these decrees that the interest on Ingraham's capital was not to be considered as capital but was only to be considered as capital or paid to him as capital in case there were profits, and that it was not to be considered as a loss in reckoning the losses. This is in accordance with the provisions of the contract, also, which provided that the six per cent on Ingraham's capital was not to be paid until the sale of the land and then added to the capital stock. It was to be added to the capital stock for the purpose of ascertaining Cooper's profits, as the contract further provides that after adding all expenses and the interest on Ingraham's capital Cooper was to receive half of the profits that remained. It is clear by the contract that Ingraham's interest on his capital was not to be considered as expenses or as capital for the purpose of ascertaining profits or losses, but was in reality to be retained by Ingraham and deducted from the profits the same as if it were capital in ascertaining the amount of profits, in case there should be any. In other words, there was a special profit that Ingraham was to be allowed to have or make in case of the profits expected by both parties. The circuit court, and this court by directing that this charge was not to be considered as capital in the division of losses, excluded it entirely in the matter of ascertaining the losses between the parties, and it is neither to be regarded as a part of Ingraham's capital or his losses or expenses in the accounting for losses. If it is to be considered at all it can be only considered as a part of Ingra-

ham's contribution or capital to the concern, and then the losses would be adjusted on the basis of their capital, and Ingraham's capital would be $70,000 plus said interest. As is already shown, the decree of the circuit court, affirmed by the decision of this court, forbids entirely the consideration of Ingraham's interest as a part of his capital in the adjustment of the losses.

After sustaining plaintiffs in error's contention on their first proposition there remains no equitable ground for the circuit court decreeing all costs of the accounting against them. It does not appear in the record what specific items entered into the matter of costs. The nature or character of any of these charges is in no way referred to or discussed by the parties. It will be assumed, therefore, in the absence of any showing, that all the costs are legitimate costs in the making or taking of the accounting by the master. The parties therefore should bear the costs in the same proportion as the other expenses of the co-partnership,— *i. e.,* thirty per cent thereof shall be paid by plaintiffs in error and seventy per cent thereof by defendant in error, as surviving executor and trustee under the will of Granville S. Ingraham.

The only error assigned by John F. Gilchrist, plaintiff in error in cause No. 11082, is, that the Appellate Court erred in sustaining the circuit court in its refusal to allow legal interest on the amount found due plaintiff in error in the accounting for losses. There is no merit in this contention. There is no more reason for allowing said plaintiff in error interest than for allowing it to defendants in error in said cause, J. Platt Underwood and the executors of Mariner. The agreement in question was in the nature of articles for the formation of a co-partnership, and was not "an instrument in writing" within the meaning of our statute on interest. The losses shared by the respective parties are not obligations or debts from the one to the other, and the amounts payable to each of the parties after the

adjustment of the losses, out of the $30,000 or otherwise, are firm obligations, and the relation of debtor and creditor, in the sense of our statute on interest, never existed between the parties. There was no written promise or obligation on the part of either to pay the other any sum of money.

After eliminating the improper items of the accounting in the way of interest on capital, as aforesaid, the statement of the amount of loss to be borne by the respective parties to these proceedings will be found to be very simple. The total amount of the sale, less expenses of the sale, was $94,768.80. The amount of this sum retained by the surviving executor of Ingraham, the purchaser, was $64,768.80, and he paid into the hands of the master the remainder thereof, $30,000, which amount, according to references in the briefs of the parties, appears to be invested in some kind of interest-bearing securities by the master in chancery and is awaiting the final decision of this case. The first items to be paid out of the purchase money, after paying the expenses of the sale, are the taxes and expenses paid by the respective parties and the interest thereon. For those taxes and expenses Ingraham's executors are entitled to $78,570.97. For the same items, and interest, Underwood and Mariner's executors are entitled to $1679.37. These two sums deducted from the net purchase money leaves a net balance of $14,518.46. The only other items of loss to the parties are the items of capital, $70,000 to Ingraham's executor and $30,000 to Underwood and Mariner's executors. Underwood and Mariner's executors have received no sum on distribution. They are therefore entitled to receive for taxes and expenses paid by them, and the interest thereon, said sum of $1679.37. They are also entitled to receive thirty per cent of said net balance of $14,518.46, or $4355.54, making a total of $6034.91. Said total sum of $6034.91 is to be paid out of the sum of $30,000 in the hands of the master in chancery, together with whatever interest said sum of $6034.91, if any, has

realized by any investment made by the master in chancery while in his hands. Ingraham's executor is entitled to seventy per cent of the said net sum of $14,518.46 as his portion, or $10,162.92. He is also entitled to receive said sum of $78,570.97 for taxes and expenses paid, and interest thereon, making a total of $88,733.89. He has already received of said amount $64,768.80. There is therefore due him out of said sum of $30,000 in the hands of the master the sum of $23,965.09. He is also entitled to whatever amount of interest, if any, the said sum of $23,965.09 has drawn while in the hands of the master, less whatever costs are to be paid by him as provided in this opinion.

For the errors indicated, the decrees of the circuit and Appellate Courts are reversed and the causes are remanded to the circuit court, with directions to enter a decree of final accounting between the parties in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

---

(No. 11530.—Reversed and remanded.)
THE PEOPLE *ex rel.* William H. Fitzgerald *et al.* Appellees,
*vs.* FRANK B. STITT *et al.* Appellants.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. CONSTITUTIONAL LAW—*curative act of 1917, regarding high school districts, is valid.* Section 1 of the curative act of June 14, 1917, providing that any compact and contiguous territory may organize into a high school district, is valid, as being within the power of the legislature to pass such an act in the first instance.

2. SAME—*whether law is general or special does not depend on the number it governs.* Whether laws are general or special does not depend upon the number of persons who are within the scope of their operation.

3. SAME—*curative act of 1917, regarding high school districts, is not a local or special law.* The curative act of June 14, 1917, regarding high school districts, applies to all territory, compact and contiguous, that has organized a high school by a majority