## Ephraim Mariner et al. v. Harriette A. Ingraham et al.

### Gen. No. 12,772.

1. WORDS AND PHRASES—" *advantageous*" *as used in contract, construed.* A contract which provides that a sale of real estate shall be made when "advantageous" does not necessarily mean that a sale should only be made when profitable, as a sale might be advantageous, as is held in this case, when it will prevent the entailment of further losses to the parties.

2. FINDINGS OF MASTER—*when not disturbed.* The findings of a master, approved by the chancellor, will not be disturbed unless manifestly against the weight of the evidence.

Bill in equity to construe and enforce contract. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** This is an appeal by Ephraim Mariner and J. Platt Underwood, from a decree of the Circuit Court rendered against them March 22, 1905, in favor of appellees. The litigation arose out of a contract between Granville S. Ingraham and A. J. Cooper, of date January 2, 1889, with regard to certain land. Ingraham died December 20, 1892, leaving a will in which Harriette Ingraham, Henry V. Freeman and John F. Gilchrist were named as executors, and May 4, 1898, the executors filed a bill, the main object of which was to procure a judicial construction of the agreement, which agreement is as follows:

"1.   This article of agreement, made this second day of January, 1889, between Granville S. Ingraham of Hyde Park, Cook County, State of Illinois, of the first part, and A. J. Cooper, of the same place, of the second part.

"2.   Witnesseth:   The said Granville S. Ingraham owns one hundred acres of land, be the same more or less, all of which he puts in as capital stock at $1,000 per acre, making the stock capital $100,000. The said land is situated in section 33, township 38, range 14, third principal meridian. It is bounded on the north by Seventy-ninth street, on the

Mariner v. Ingraham.

west by Wentworth avenue, on the east by State street, and on the south by Eighty-fourth street.

"3.   The said A. J. Cooper, of the second part, being desirous of taking an interest in said land, agrees to make a loan of $30,000 (thirty thousand dollars) at his own expense; also agrees to pay the interest on said loan and six per cent. on balance of capital stock to the said Granville S. Ingraham; the six per cent. on the balance is not required to be paid until the sale of said land; then that amount to be added to the capital stock.

"4.   Said Ingraham agrees that said loan may be placed on the above described land, and in default of the payment of interest on said loan when due being made by said A. J. Cooper of the second part, he (A. J. Cooper) forfeits all interest in said described land.

"5.   All taxes or expenses paid by either party shall also draw six per cent. interest; and be it further understood that there shall be no commission charged for selling or looking after said land.

"6.   It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties.

"7.   The said Ingraham of the first part agrees to give said Cooper of the second part half of the profits after adding all the expenses and interest to the $1,000 (one thousand dollars) per acre of said land.

"8.   Be it further agreed that the $30,000 loan and interest on said loan shall be paid whenever said land shall be sold.

"9.   We further agree to each pay half of the two and one-half per cent. commission on the $30,000 loan, to be adjusted when the property shall be sold.

"Dated Hyde Park, Jan. 2, '89.

G. S. INGRAHAM,
A. J. COOPER."

Issues were made up, the cause was referred to a master, and was heard on exceptions to the master's report, and July 6, 1900, the court rendered a decree in the cause, from which the executors of the will of G. S. Ingraham, deceased, appealed to the Supreme Court. The case, including the decree of the Circuit Court, is fully stated in the opinion of the Supreme Court in Ingraham v. Mariner, 194 Ill. 269, to which we refer. The court affirmed the decree of July 6, 1900, rendered by the Circuit Court, using this

language: "The decree of the court below is affirmed in all respects, except so far as it allows the interest paid by Cooper and his assignees, upon the $30,000, to be deducted from the proceeds of sale. In this respect the decree is reversed." * * * "Accordingly, the decree of the Circuit Court is reversed and the cause is remanded to that court, with directions to change and modify its decree in the respect hereinbefore indicated." April 15, 1902, the Circuit Court rendered a decree modifying its decree of July 6, 1900, as directed by the Supreme Court.

The appellees are assignees of Cooper's interest in the Ingraham–Cooper agreement, and have paid or purchased a mortgage of the land in question for the $30,000 mentioned in the agreement, which mortgage was made by Ingraham to secure payment of that amount and interest. The decree of 1902, following the one of 1900, contains a provision, in substance, that the parties had stipulated that the best time for a sale had not arrived, and that it would not be advantageous to them to have an immediate sale, and directed that no sale should be made until a further order of the court, upon application of the parties showing that they were unable to agree to a sale. April 9, 1904, the appellees filed a petition, averring, in substance, that the parties had stipulated that the best time for a sale had not arrived, and that it would not be advantageous to them to have an immediate sale, and directed that no sale should be made until a further order of the court, upon application of either of the parties showing that they were unable to agree to a sale. April 9, 1904, the appellees filed a petition, averring, in substance, that appellants had declined to make a sale, or agree on a time for the master to make one, or to pay any part of the taxes or assessments paid by appellees, which, since Ingraham's death, amounted to $62,000, and appellees were unable to continue paying the same, so that the property might be sold for taxes; that the then time was as good to sell as could reasonably be expected; that the appellees could not distribute the Ingraham estate till the land in question would be sold, and

that the legatees were threatening to compel distribution, it being twelve years since Ingraham's death; that the terms of sale prescribed by the former decree were one-third cash and the remainder in one, two and three years, and that appellees were advised that conditions might arise making it desirable to give a purchaser the right to pay all cash, and that should appellees become the purchasers, it would be superfluous for them to pay money, which the master would have to return to them, and that their receipt for the same should be accepted in lieu of cash. Appellees pray for such modification of the terms of sale and for an order instructing the master to sell. By an amendment to the petition, filed June 21, 1904, appellees aver the levy of a special assessment on the property of $12,965.10, and that they have no means of paying it. The appellants filed an answer, averring that the best time for a sale had not arrived; that conditions and prices were no better than when the former decree was entered; that experienced real estate men were of the opinion that the value of the land would materially advance within a few years, etc. Appellants deny, substantially, all the material allegations of the bill and object to any modification of the terms of sale, and to any sale as prayed, for the alleged reason that a proper time for an advantageous sale had not arrived, and because a sale, as prayed, would result in great financial loss to them. The cause was referred to a master to take proofs and report the same, with his conclusions. The master filed his report February 29, 1905. His condensed report of the evidence (which is reported in full) is as follows:

That three expert witnesses testified for respondents that the present was an unfavorable time and three for the petitioners testified that the premises could now be sold for a fair valuation. Schedule of testimony of these witnesses appended, showing respondents' witnesses have been in real estate business respectively fourteen, thirty-four and thirty-five years, and that two of them are members of the real estate board. That petitioners' witnesses have been in the

real estate business respectively twenty-five, twenty and
nineteen years, and that only one of them is a member of
the real estate board.   That respondents' witnesses testi-
fied that there had been no change for the better since 1902,
while petitioners' witnesses testified there was such a
change for the better.   Respondents' witnesses testified
present condition of market poor; petitioners' witnesses
present condition of market fair.   Respondents' witnesses
testified present was not a good time to sell; petitioners'
witnesses that present was a good time to sell.   One of re-
spondents' witnesses placed present value at $400, and two
of them placed it at $1,000 per acre.   Petitioners' witnesses
placed present value at $1,500, $1,250 and $1,000 per acre;
and on the question as to whether the value would be higher
in the future, all six witnesses testified that it would be.
The petitioners' three witnesses testified premises should be
sold now, because there were liable to be special assess-
ments and carrying charges which would be very largely
increased.

Following are the master's conclusions :  That according
to the estimate of value given by witnesses, the parties
would now receive very little besides the capital invested
by them respectively.   All the rest would be a loss.   That
the cost of carrying property would be likely to increase
faster than the land could be expected reasonably to increase
in value.   That petitioners, acting as trustees of an estate,
must be held to a stricter accountability than individual
owners, and should not be permitted to carry on a transac-
tion showing an ever increasing loss.   That a court of chan-
cery would carry out the intention of the parties when plain,
and would look through technical features to the substance
and conserve all interests by putting an end to a steadily
growing loss, in a case where such loss exceeds the increase,
as a prudent man would do in the management of his own
affairs, and I therefore advise that the prayer of the peti-
tioners in this petition filed in the above entitled cause be
granted by this court.

Appellants filed exceptions to the master's report, and

March 22, 1905, the court overruled the exceptions, confirmed the master's report, and decreed, in substance, that the master, on the expiration of six months from the entry of the decree, should proceed to advertise and sell the land, at public auction, to the highest bidder, and that the purchaser, should he so elect, might pay the whole or part of the deferred payments in cash, at the time of confirmation of the sale, or later, instead of paying one-third cash and the remainder in one, two and three years, and that, in the event that either Mariner or Underwood should purchase, he should not be required to pay to the master the amount of the $30,000 encumbrance; but the master might take a receipt for the sum as cash. A like provision is made in respect to appellees, should they become the purchasers, as to any amount which might be due to them, after the payment by them in cash of $30,000 and the costs of sale, etc.

SCOTT, BANCROFT, LORD & STEPHENS, for appellants.

E. A. and W. K. OTIS, for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellants' counsel contend that the time fixed by the decree of March 22, 1905, for a sale, is not an advantageous time at which to sell the premises in question, and rely on the evidence and the provision in the Ingraham-Cooper agreement, viz: "It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties." We do not understand counsel to contend that the land cannot be sold until such time as all the parties in interest shall agree, but merely that, in view of the contract, there cannot be a sale until such time as it may be mutually advantageous, and counsel use the word "advantageous," in the sense of profit to the parties, or at least, no loss. In this sense, the evidence clearly shows that if the land should have been sold at the time decreed, there would have been great financial loss to both parties, and the master, whose report was confirmed, found that according to the estimate of value given by the witnesses,

there would be a loss to both parties. If, therefore, the premises are, by the agreement, not to be sold until such time as the sale will bring profits to the parties, the decree is erroneous. But we do not think that the word "advantageous" is necessarily to be understood as referring solely to profits. If parties interested in real estate are continuously losing money on their investment, by decrease in value of the property and the payment of taxes and special assessments and loss of interest, so that they are continuously growing poorer by reason of holding the property, it may be greatly to their advantage to sell the property, in order to stop the loss which the holding of it entails. The evidence shows that both parties have suffered great financial loss by withholding the premises from sale. Counsel for appellants rely on the following language in the opinion in Ingraham v. Mariner, 194 Ill. 286, between the same parties: "Section 6 of the contract provides as follows: 'It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties.' This amounts to an implied understanding that the property should be sold when both parties should regard it as advantageous to sell it, and is inconsistent with the idea that there should be a partition of the land itself between the parties." This was said in reference to a claim of the complainants in the cause that partition should be made of the land in question, as the contest shows, and not at all as an intimation that the land could not be sold till such time as both parties should deem it most advantageous to sell, and should so agree. In the same opinion the court say: "Cooper certainly had a beneficial interest in the proceeds of the land, and that interest would attach to the net profits arising upon the sale of the property. His interest in the proceeds and the profits constituted a lien or charge upon the land, so that appellees had a right to file a bill to compel a sale." This is said, notwithstanding section 6 of the agreement quoted in the opinion. The decree of July 6, 1900, which has been affirmed by the Supreme Court, contemplates a sale, in case of non-agreement, on

application by either of the parties. Appellants' counsel say that the appellees, in seeking a sale, have no intention to procure the sale of the interest of the Ingraham estate, that their real motive is to eliminate the interest of appellants, which, by bidding $30,000 and costs and becoming the purchasers, they may do, under the terms of the decree. The decree is equal as between the parties. Appellees may bid at the sale, and, if they should be the highest bidders, they may become the purchasers, and thus eliminate the interest of the Ingraham estate.

Counsel for appellants object that the decree of March 22, 1905, is erroneous, in not requiring appellees, in case of purchase by them, to pay more than $30,000 in cash, and the cost of sale, and that the master accept from them receipts for what may appear to be due them in lieu of money; that such an order could only be proper after an accounting, and it must be assumed that a larger bid than $30,000 and cost of sale may be made; and that the decree is also erroneous in changing the terms of the decree of 1892, so that the purchaser might, at his option, pay all or any part of the deferred payments in cash, within the time fixed by the decree. The $30,000 is a lien on the land and must first be paid, in any event, if the land sells for so much, and if for less, then the proceeds, less the cost of sale, must be so applied, and, therefore, no accounting is necessary so far as the encumbrance of $30,000 is concerned. In Mariner v. Ingraham, *supra*, the court say: " In order to determine the amount of profits, which are to be divided between these parties, there should be deducted from the proceeds of the sale, *first*, the principal of the mortgage, amounting to $30,000, and the current interest due thereon between the maturity of the last installment of interest and the date of the sale," etc. As to that part of the decree requiring the master to accept the receipts of appellees for what may be due them, in the event they become the purchasers, it is sufficient, as we think, to say that if appellees should become the purchasers, and the proceeds of the sale should be such as to pay profits, after making the deductions di-

rected by the court in the opinion in Ingraham v. Mariner, *supra*, and an account should then appear necessary, the account could be taken for the purpose of determining the amount due to appellees for which their receipts should be taken, in lieu of cash, on their bid.

In view of the directions of the court in Ingraham v. Mariner as to the deductions which should be made from the proceeds of the sale, in order to ascertain profits, if any, and the provision in section 7 of the agreement that the profits are to be equally divided between the parties, each to have half, the statement of an account between them would be a mere matter of computation.

We do not think the decree erroneous in providing that a purchaser may, if he chooses, pay the amount of his bid in cash. The rule is that when the finding of a master has been approved by the chancellor, the finding will not be disturbed unless manifestly against the weight of the evidence. Siegel v. Andrews & Co., 181 Ill. 350, 356.

We cannot say that the finding is manifestly against the weight of the evidence.

The appellees have assigned as cross-error that the decree is erroneous in providing that the master shall pay over to Mariner and Underwood the amount of said $30,000 encumbrance on confirmation of the sale. We think this in accordance with the opinion in Ingraham v. Mariner, 194 Ill. 269, 283, and, therefore, cannot sustain the assignment.

A motion of appellees to dismiss the appeal was reserved till the hearing. The motion will be overruled.

The decree will be affirmed.       *Affirmed.*