### Ephraim Mariner et al. v. Harriette A. Ingraham et al.

#### Gen. No. 12,576.

1. Final order—*effect of, made by Supreme Court.* A final order entered on reversal in the Supreme Court operates as a mandate to the Circuit Court and it is bound to obey the same.

Mariner v. Ingraham.

2. RES JUDICATA—*effect of failure to assign cross-errors upon question of.* A decree which has been before the Supreme Court and passed upon by it is conclusive with respect to all questions raised and passed upon, and also with respect to all questions which might have been raised by cross-errors, but which were not.

Bill in equity. Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** The writ of error was sued out in this case by plaintiffs in error, who are the assignees of the interest of A. J. Cooper in an agreement between Granville S. Ingraham and said Cooper, of date January 2, 1889. Granville S. Ingraham died testate December 20, 1902, and the defendants in error are the executors and trustees under his will. The object of the writ is to reverse a decree of the Circuit Court rendered April 15, 1902. A decree was rendered in the cause by that court July 6, 1900, from which an appeal was taken to the Supreme Court by the executors, defendants in error here, and the Supreme Court affirmed the decree in all respects except one, using this language: "The decree of the court below is affirmed in all respects, except so far as it allows the interest paid by Cooper and his assignees upon the $30,000 to be deducted from the proceeds of sale. In this respect the decree is reversed. * * * Accordingly, the decree of the Circuit Court is reversed, and the cause is remanded to that court, with directions to change and modify its decree in the respect hereinbefore indicated." The final order of the Supreme Court, in the appeal, entered December 18, 1901, is as follows:

"HARRIET A. INGRAHAM, HENRY V. FREEMAN, AND JOHN T. GILCHRIST, EXECUTORS AND TRUSTEES UNDER THE WILL AND TESTAMENT OF GRANVILLE INGRAHAM, DECEASED,

No. 1545    vs.

EPHRAIM MARINER, J. PLATT UNDERWOOD AND JOHN M. GARTSIDE.

Appeal from Circuit Court Cook.

And now, on this day, this cause having been argued by

counsel, and the court having diligently examined and inspected, as well the record and proceedings aforesaid, as the matters and things therein assigned for error, and being now sufficiently advised of and concerning the premises, for that it appears to the court now here, that neither in the record and proceedings aforesaid, nor in the rendition of the decree aforesaid, is there anything erroneous, vicious or defective, and that in that record there is no error; Therefore, it is considered by the court, that the decree aforesaid be affirmed in all things, and stand in full force and effect, except as modified by the decree of this court as hereinafter set forth, notwithstanding the said matters and things therein assigned for error. And it is further considered by the court that the said decree of this court below is affirmed in all respects except in so far as it allows the interest paid by Cooper and his assignees upon the $30,000 to be deducted from the proceeds of sale. In this respect the decree is reversed. And the costs will be equally divided between the parties, each to pay one-half. Accordingly, the decree of the Circuit Court is reversed, and the cause is remanded to that court with directions to change and modify its decree in the respect hereinbefore indicated. And it is further considered by the court that execution for the costs in this behalf expended issue accordingly."

On the filing of this order in the Circuit Court the decree of April 15, 1902, was rendered. The agreement which gave rise to the litigation between the parties is as follows:

"1. This article of agreement, made this second day of January, 1889, between Granville S. Ingraham of Hyde Park, Cook County, State of Illinois, of the first part, and A. J. Cooper, of the same place, of the second part.

"2. Witnesseth: The said Granville S. Ingraham owns one hundred acres of land, be the same more or less, all of which he puts in as capital stock at $1,000 per acre, making the stock capital $100,000. The said land is situated in section 33, township 38, range 14, third principal meridian. It is bounded on the north by Seventy-ninth street, on the west by Wentworth avenue, on the east by State street, and on the south by Eighty-fourth street.

"3. The said A. J. Cooper, of the second part, being desirous of taking an interest in said land, agrees to make a loan of thirty thousand dollars ($30,000) at his own ex-

pense; also agrees to pay the interest on said loan and six per cent. on balance of capital stock to the said Granville S. Ingraham; the six per cent. on the balance is not required to be paid until the sale of said land; then that amount to be added to the capital stock.

"4. Said Ingraham agrees that said loan may be placed on the above described land, and in default of the payment of interest on said loan when due being made by said A. J. Cooper of the second part, he (A. J. Cooper) forfeits all interest in said described land.

"5. All taxes or expenses paid by either party shall also draw six per cent. interest; and be it further understood that there shall be no commission charged for selling or looking after said land.

"6. It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties.

"7. The said Ingraham of the first part agrees to give said Cooper of the second part half of the profits after adding all the expenses and interest to the $1,000 (one thousand dollars) per acre of said land.

"8. Be it further agreed that the $30,000 loan and interest on said loan shall be paid whenever said land shall be sold.

"9. We further agree to each pay half of the two and one-half per cent. commission on the $30,000 loan, to be adjusted when the property shall be sold.

Dated Hyde Park, Jan. 2, '89.

G. S. INGRAHAM,<br>A. J. COOPER."

The substance of the decree of July 6, 1900, is contained in the statement preceding the opinion in the appeal in Ingraham v. Mariner, 194 Ill. 269, and, for the sake of brevity, we refer to that statement and the opinion following it.

SCOTT, BANCROFT, LORD & STEPHENS, for plaintiffs in error.

E. A. and W. K. OTIS, for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The plaintiffs in error will be referred to in this opinion

as plaintiffs, and the defendants in error as defendants, omitting the words "in error."

1.   Plaintiffs' counsel contend that the decree of April 15, 1902, is erroneous, in that it gives priority to the payment from the proceeds of the sale of the taxes and expenses paid by the defendants, over those paid by plaintiffs, whereas the decree of July 6, 1900, gave no such priority. The part of the decree referred to is as follows:

"The court further finds that upon the sale of the property there shall be paid from the proceeds thereof, ·

First.   To Mariner, Underwood, or to the holder thereof, the principal of said note secured by said mortgage of $30,000 and current interest only accruing, but not due, from the 2nd day of January or of July, as the case may be, next preceding the date of the sale of the lands.

Second.   There shall be paid to the executors and trustees of the Ingraham estate $70,000, with interest at the rate of six per cent. from the 2nd day of January, 1889, down to the date of sale.

Third.   There shall be paid to the said executors and trustees all taxes, special assessments and expenses of any description which have been paid by the said Ingraham, or by themselves as his executors and trustees, in respect to the premises in question, and in carrying the same since January 2, 1889, with interest at six per cent. upon the several amounts paid as aforesaid, from the time of payment thereof up to the date of sale.

Fourth.   There shall be paid to Mariner, Underwood and Gartside, as assignees of Cooper, all taxes, special assessments or expenses of any description, other than interest on said $30,000 note, paid or incurred by them respectively, since the 2nd day of January, 1889, with interest at six per cent. from the date thereof to the date of sale.

That the balance of the proceeds of sale constituted profits under the contract, and should be divided equally, one-half thereof to the executors and trustees, and the other half to Mariner, Underwood and Gartside."

It is evident that the language quoted was used in contemplation of the possibility that the proceeds of the sale might be sufficient to pay profits.   The decree in this respect is in entire harmony with the opinion in Ingraham v. Mariner, 194 Ill. 282–283, in which the court, also in con-

templation of the possibility of profits, prescribes deductions in the same order. Assuming, but not deciding, that priority was intended by the language used in the decree, it is pertinent to consider that while Ingraham was bound by the agreement to pay the carrying charges of the land, including taxes and assessments, Cooper was not, nor were his assignees, so bound. His and their obligation was merely to pay the interest on the $30,000 encumbrance on the land. Such payment was, as said by the court in Ingraham v. Mariner, *supra*, p. 280, "as a consideration for the half interest which he was to have in the profits." The Supreme Court, in its opinion, states the order in which deductions are to be made, in ascertaining profits, if any, precisely as does the decree, using this language:

"In order to determine the amount of the profits, which are to be divided between these parties, there should be deducted from the proceeds of the sale, *first*, the principal of the mortgage, amounting to $30,000, and the current interest due thereon between the date of the maturity of the last installment of interest and the date of the sale; *second*, $70,000, balance of the capital stock, and interest at six per cent. thereon from the date of the contract to the date of the sale; *third*, taxes and expenses paid by Ingraham, and interest at six per cent. thereon from the time of payment up to the day of sale; *fourth*, taxes and expenses, if any, paid by Cooper or his assignees, and interest thereon at six per cent. from the time of payment up to the date of sale. After deducting these amounts, the remainder will be the profits which are to be divided between the parties. The deductions so to be made, in order to reach the amount of the profits, are to be distributed as follows: To the holders of the note and mortgage, $30,000 and interest thereon since the maturity of the last installment of interest; to the estate of Ingraham, $70,000 and six per cent. interest thereon up to the date of sale; also to said estate the taxes and expenses paid by Ingraham or his representatives, and interest thereon up to the date of sale; and to the ap-

pellees, such taxes and expenses, with interest at six per cent., as they have paid out."

Counsel for plaintiffs, after referring to the part of the opinion above quoted, say: "But the opinion does not say, in either connection, that such payments are to be made in that order, or that Ingraham is entitled to be repaid the balance of $70,000 of his so-called capital and interest thereon, before the payment of the carrying charges—or that Ingraham is to be repaid his advances for carrying charges, with interest thereon, before Cooper and his assigns are to be repaid theirs, if they have made any advances. On the contrary, the obvious meaning is, that the loan secured by mortgage on the premises, which is a lien upon the property, shall be first removed, because in no other wise could title be given; that next the carrying charges, the so-called expenses of the enterprise should be repaid; and then, out of the remainder, should be paid the so-called $70,000 of capital with interest thereon, if the proceeds were sufficient therefor."

If this is true of the opinion, we cannot perceive why it is not also true of the decree, which follows the opinion.

2. Counsel for plaintiffs contend that the decree is erroneous, in that it provides " that in case there should be no profits, and there should not be sufficient to repay the capital, interest and expenditures aforesaid, each of the parties shall pay his *pro rata* share of the losses, according to the contribution made by each." In view of the opinion in Ingraham v. Mariner, *supra*, that " Cooper contributed no capital at all," ib. 280, which is equally true of the plaintiffs, his assignees, we cannot perceive how the language criticised can injuriously affect the plaintiffs. It must be presumed that the Circuit Court in carrying the decree into effect will be guided by the opinion in Ingraham v. Mariner. But the same provision, in precisely the same language, is contained in the decree of July 6, 1900, which decree, as has been shown, was affirmed in Ingraham v. Mariner, *supra*, except in one respect, which does not affect the effect of the affirmance. That the provision did not

escape the attention of the court, on appeal, is evidenced by the fact that it appears in the statement preceding the opinion. 194 Ill. p. 275.

Counsel for defendants contend that all provisions in the decree of July 6, 1900, which has been affirmed by the Supreme Court, including the provision in question, are *res adjudicata* as between the parties, and, therefore, cannot be reviewed here, to which contention plaintiffs' counsel answer, that the decree of April 15, 1902, expressly provides as follows : " And it is ordered that this decree shall stand in place of the decree entered on July 6, 1900." Also, that the provision as to losses is not in accordance with the Ingraham–Cooper agreement, or the opinion and mandate of the Supreme Court. The language at the end of the decree of July 15, 1902, that the decree " shall stand in place of the decree entered on July 6, 1900," is superfluous, and if stricken out, the effect of the decree would be precisely the same as now. It has no effect whatever on the question whether any matter adjudged in the decree of July 6, 1900, is conclusive as between the parties and on us.

Counsel for both parties agree that the decree of July 6, 1900, was affirmed in all respects, except as to the allowance, by that decree, of interest paid by Cooper and his assignees on the $30,000 encumbrance. But plaintiffs' counsel contend that the Supreme Court, in its opinion, contemplated that the decree of July 6, 1900, should be modified in other respects than in respect to the allowance of interest paid by Cooper and his assigns. We think the opinion, and the final order of the court, conclusive against this view. The language of the opinion is, " The decree of the court below is affirmed in *all respects*, except so far as it allows the interest paid by Cooper and his assignees upon the $30,000 to be deducted from the proceeds of sale. In *this* respect the decree is reversed." The language of the final order, which operates as a mandate to the Circuit Court, and which that court was bound to obey, is the same. Clearly, only one modification was directed, viz.: the modification of that part of the decree allowing the interest paid

by Cooper and his assignees on the $30,000 encumbrance. The entire decree was before the court on the appeal, and the plaintiffs might have assigned errors and the defendants cross-errors in respect to anything contained in it, and the decree is conclusive, not only as to errors assigned, but as to what might have been assigned and argued. "The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter involved, and which might have been raised and determined in it." Bennitt v. Star Mining Co. et al., 119 Ill. 9, 14, and cases there cited; Springer v. Darlington, 198 ib. 121, 124. Any other doctrine would tend to unduly and unnecessarily prolong litigation and *interest reipublicæ ut sit finis litium* is a legal maxim.

3. Lastly, plaintiffs' counsel contend that the decree is erroneous in allowing the defendants to become purchasers at the sale of the land. The language of the decree is "that any of the parties to this suit may become purchasers at such sale." Precisely the same language is contained in the decree of July 6, 1900, affirmed in Ingraham v. Mariner. Therefore, the question is *res judicata,* and not open for review in this court. But, were it otherwise, we could not sustain the contention.

Counsel for plaintiffs cite cases which they claim support their contention that the defendants, being trustees, could not legally purchase. They are, certainly, not trustees for the plaintiffs. We have examined the cases cited. It is sufficient to say of them, that they are each and all to the effect that an executor, trustee, or person sustaining a fiduciary relation to another, cannot legally purchase for himself and on his own account, at a judicial sale, land in which, or the proceeds thereof, the estate he represents, or the person to whom he sustains a fiduciary relation, is interested. The defendants here are not parties to the suit as individuals, but in their representative capacity, as executors and trustees under the will of their testator, and the decree refers to them as such, and not as individuals. There can be no question, that should the defendants, or

Mariner v. Ingraham.

any one of them, bid and purchase, for himself and on his own account, the court would promptly set aside the sale as unauthorized by the decree.

Counsel for plaintiffs, in arguing a motion made by the defendants to dismiss the writ of error, say that they did not assign cross-errors on the appeal to the Supreme Court from the decree of July 6, 1900. While this may be true, it does not affect the question of *res judicata* discussed in this opinion. In Suburban R. R. Co. v. City of Chicago, 204 Ill. 306, 316, the court, commenting on Page v. The People, 99 Ill. 418, relied on by counsel here, say: "In the Page case, the court expressly say that, 'if when the record brought up by that writ was before that court, the question raised by the error here assigned was presented * * * the plea is good'; that is, that the party was estopped from again assigning error after having originally failed to assign a cross-error." The appeal to the Supreme Court, Ingraham v. Mariner, was from the Circuit Court, and we cannot tell from the record before us what errors were assigned; but if the defendants, in that appeal, failed to assign cross-errors as to any matter contained in the decree appealed from, it would be clearly in conflict with the decisions in Bennitt v. Star Mining Co., Springer v. Darlington, and Suburban R. R. Co. v. City of Chicago, cited *supra*, to hold that, by reason of such omission, they might litigate here matters involved in the record before the court on the appeal.

A motion by the defendants to dismiss this writ of error was reserved till the hearing. The motion will be overruled.

The decree will be affirmed.

*Affirmed.*