EPHRAIM MARINER *et al.*

*v.*

HARRIETTE A. INGRAHAM *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 4, 1907.*

1. JUDGMENTS AND DECREES—*when parties are entitled to have time for sale fixed.* Where a decree provides that the master shall not proceed with the sale of land until further order, upon an application showing the parties cannot, between themselves, agree upon a time and are unable to make such sale, the time for the sale may be fixed upon a showing to the court that the conditions mentioned in the decree exist, that large sums have been and will be paid out in taxes, that the land is likely to be sold for future taxes, and that present conditions are as favorable as they are likely to be.

2. SAME—*when modification of terms of sale is proper.* Where a decree providing for the sale of land fixes the terms as one-third cash and the balance in one, two and three years, it is not improper for the court, upon petition of certain of the parties interested, to modify the terms of the sale by allowing the purchaser to pay all cash upon approval of the sale or defer the payments as previously provided in the decree, at his option; nor is it error for the court to direct that the parties interested may become purchasers if they are put upon equal terms in that respect by the decree.

3. RES JUDICATA—*when provisions of a decree are res judicata.* Where the Supreme Court affirms a decree in all respects save one, in which a modification is directed, if the modified decree, aside from the modification made in pursuance of the mandate of the Supreme Court, is in all essential particulars identical with the former decree, its provisions are *res judicata* and not again open to review.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

On January 2, 1889, Granville S. Ingraham was the owner of one hundred acres of land in the south part of Chicago, bounded by Seventy-ninth street on the north, Wentworth avenue on the west, Eighty-fourth street on the south and State street on the east. On the same day he entered into a contract with A. J. Cooper, as follows:

*"Articles of Agreement between G. S. Ingraham and A. J. Cooper:*

"This article of agreement, made this second day of January, 1889, between Granville S. Ingraham of Hyde Park, Cook county, State of Illinois, of the first part, and A. J. Cooper of the same place, of the second part:

*"Witnesseth:* The said Granville S. Ingraham owns one hundred acres of land, be the same more or less, all of which he puts in as capital stock at $1000 per acre, making the capital stock $100,-000. The said land is situated in section 33, township 38, range 14, third principal meridian. It is bounded on the north by Seventy-ninth street, on the west by Wentworth avenue, on the east by State street and on the south by Eighty-fourth street. The said A. J. Cooper, of the second part, being desirous of taking an interest in the land, agrees to make a loan of $30,000 (thirty thousand dollars) at his own expense; also agrees to pay interest on the said loan and six per cent on the balance of capital stock to the said Granville S. Ingraham. The six per cent on the balance is not required to be paid until the sale of said land, then that amount to be added to the capital stock. Said Ingraham agrees that said loan may be placed on the above described lands, and in default of the payment of interest on said loan, when due, being made by said A. J. Cooper, of the second part, he (A. J. Cooper) forfeits all interest in said described land. All taxes or expenses paid by either party shall also draw six per cent interest. And be it further understood that there shall be no commissions charged for selling or looking after said lands. It is also mutually agreed to sell said lands whenever regarded as most advantageous to both parties. The said Ingraham, of the first part, agrees to give to said Cooper, of the second part, half of the profits, after adding all expenses and interest to the $1000 (one thousand dollars) per acre of said land. Be it further agreed that the $30,000 loan, and interest on the said loan, shall be paid whenever said land shall be sold. We further agree to each pay half of the two and one-half per cent commission on the $30,000 loan, to be adjusted when the property shall be sold.

"Dated Hyde Park, Jan. 2/89.          G. S. INGRAHAM,
                                        A. J. COOPER."

Pursuant to this agreement Cooper procured the loan of $30,000, for which Ingraham gave his note and a lien on

the land as security.  On June 12, 1891, Cooper transferred his interest in the aforesaid contract to Ephraim Mariner and J. Platt Underwood, appellants herein, who thereby succeeded to his rights and incurred his obligations under the original contract.  On December 20, 1892, Granville S. Ingraham died, leaving a last will and testament, which was admitted to probate in the county court of Cook county on December 28, 1892, and letters testamentary thereon were issued to appellees, Harriette A. Ingraham, Henry V. Freeman and John F. Gilchrist.

May 8, 1898, the executors filed a bill for the purpose of obtaining a construction of the foregoing agreement. The issues as made up were referred to the master and were heard on exceptions to the master's report.  On July 6, 1900, a decree was entered in the cause, from which the executors of the will of Granville S. Ingraham (appellees herein) appealed to this court.  For a full statement of that litigation we refer to the case of *Ingraham* v. *Mariner,* 194 Ill. 269.  The court, in reversing the decree of the court below, used the following language: "The decree of the court below is affirmed in all respects, except so far as it allows interest paid by Cooper and his assignees upon the $30,000, to be deducted from the proceeds of the sale.  In this respect the decree is reversed.  Accordingly, the decree of the circuit court is reversed and the cause is remanded to that court, with directions to change and modify its decree in the respect hereinbefore indicated."  The mandate of this court was filed in the circuit court, and thereupon, on April 15, 1902, the court rendered a decree modifying the decree of July 6, 1900, in accordance with the opinion of this court. Among other orders in that decree was the following: "Inasmuch as it has been stipulated herein between the parties in this case that the best time for the sale of said premises has not yet arrived, and that it would not be advantageous to the parties to have a sale made at once nor until the further order of the court as to the time of making such sale,

the court therefore directs the master that such sale shall not be made in the execution of this decree until the further order of this court, and upon the application of some of the parties in interest herein showing that the parties in interest cannot, between themselves, agree upon the time of such sale and are unable themselves to make such sale. If the parties themselves make such sale, the proceeds shall be paid to such master and be distributed according to the provisions of this decree."

April 9, 1904, appellees filed their petition in the circuit court of Cook county, in which they show the decree and order of sale entered by said court on April 15, 1902. The petition then sets up that appellants have declined to make a sale of the land or to agree upon a time for the master to make one, or to pay any part of the taxes and assessments which have been paid by appellees, amounting to $2500 per annum, and since Ingraham's death amounting to a total of $62,000; that appellees are unable to continue paying taxes and the property may be sold for taxes; that the present is as good a time to sell as can reasonably be expected; that appellees cannot distribute Ingraham's estate until this property is sold, and that legatees now threaten to compel such distribution, it being twelve years since Ingraham's death. The petition further alleges that appellants having refused to contribute toward the carrying charges have no equitable right to object to a sale; that the terms of sale described by the decree were one-third cash and the balance in one, two and three years, but appellees are advised that conditions may arise making it desirable to give the purchaser the right to pay all cash; that should appellants, or should appellees themselves, become purchasers it would be superfluous for them to pay in money, which the master would have to re-pay them, and that the receipt from appellants or appellees for such proceeds as go to them should be accepted in lieu of cash. Appellees ask for such modification in the terms of sale for the purpose of obtaining a higher price.

They make appellants defendants and pray for a modification of the decree and for an order instructing the master to proceed with the sale. The petition was amended June 8, 1904, by alleging a levy of special assessments against the land amounting to $12,965.10, payable in ten installments, which the executors have no means of paying.

Appellants filed their joint and several answers June 21, 1904. They denied the material allegations in the petition, and set up that a sale at that time would benefit appellees only and would entirely extinguish the interest of appellants. They further insist that a present sale cannot be made which might be regarded as most advantageous to both parties. They also insist that if appellees must sell they shall sell their interest in the estate only, and that appellees have no equitable right to and have given no sufficient reasons for forcing a present sale. They object to the modification of the decree as to the terms of the sale.

The cause was referred to the master June 25, 1904, and on February 27, 1905, he filed his report, in which he finds the issues for appellees and recommends that the order of sale be made. Appellants filed exceptions to the master's report. The cause was heard, and on March 22, 1905, the court overruled the exceptions, confirmed the master's report, and decreed, in substance, that the master, on the expiration of six months from the entry of the decree, should proceed to advertise and sell the land at public auction to the highest bidder, and that the purchaser, should he so elect, might pay the whole or part of the deferred payments in cash, at the time of the confirmation of the sale or later, instead of paying one-third cash and the remainder in one, two and three years; that in the event that either Mariner or Underwood should purchase, he should not be required to pay to the master the amount of the $30,000 encumbrance, but the master might take a receipt for that sum in cash. A like provision is made in respect to appellees, should they become the purchasers, as to any amount which might be

due to them after the payment by them, in cash, of the
$30,000 and costs of sale. From this decree the appellants
prosecuted an appeal to the Appellate Court for the First
District, where the decree of the court below was affirmed,
and by their further appeal they have brought the record to
this court for review.

SCOTT, BANCROFT, LORD & STEPHENS, for appellants.

E. A. & W. K. OTIS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The modified decree of the circuit court entered pur-
suant to the mandate of this court contains an order to the
effect that the land in question shall be sold, but it directs
the master not to proceed with such sale "until the further
order of the court and upon the application of some of the
parties in interest herein showing that the parties in inter-
est cannot, between themselves, agree upon the time of such
sale and are unable themselves to make such sale." Appel-
lees filed the petition herein, alleging that appellants had de-
clined to make a sale or to agree upon a time for the master
to make one. In this connection they further allege that
Ingraham's estate is no longer able to pay the carrying
expenses of the land, so that it may be sold for taxes; that
the appellees are unable to distribute Ingraham's estate, al-
though he had, at the time of the filing of this petition, in
1905, been dead twelve years and that legatees threaten to
compel distribution.

If the decree of April 15, 1902, be allowed to stand the
land must be sold, the question of the time of such sale only
remaining to be determined. The appellees by their petition
seek to hasten the determination of that question. In order
to do this they must, according to the terms of the decree,
show that the interested parties cannot, "between them-
selves, agree upon the time of such sale and are unable to

make such sale." Have appellees followed the petition with proof sustaining their allegations in this regard? We have only to look to the admissions of appellants, made on the witness stand, for proof that appellants refuse to consent to a sale at this time or to fix upon a definite time for the same. They insist that this is not a favorable time to sell. As to this the evidence is conflicting, but we think the weight of the evidence supports the contention that conditions, while not as favorable now as in 1891 or 1892, are as favorable as they are likely to be soon. The evidence shows sales of other acre property in the southern portion of the city and that some of these sales were at good figures. A number of improvements are being made in that locality, factories are being built in the vicinity of the land, street car lines extend along one edge of it, steam railroads pass within from half to three-quarters of a mile of it in different directions, and the belt line passes near it on the south. The activities going on in the section of the city and country surrounding the land in question indicate that the present is a reasonably favorable time for the sale of this property. The decree of the circuit court herein directs the master to proceed with the sale upon the expiration of six months from the date of the decree. This would afford ample time for advertising the property and for procuring bidders at such sale. We do not think the court erred in entering the decree and ordering the sale to proceed.

We do not see wherein the modification allowing the purchaser to pay all cash on the approval of sale or to defer such payments, at his option, can work harm to any one, and we find no error in the ruling of the trial court in this regard.

Appellants have, as plaintiffs in error, sued out a writ of error for the purpose of bringing to this court for review the decree entered in the circuit court on April 15, 1902, and that case has been consolidated with the case at bar on the hearing.

It is alleged that the decree of April 15, 1902, is erroneous in prescribing the order of payment in making distribution; that the provision that the parties should bear any loss *pro rata,* and the order allowing appellees to become purchasers at the sale, are also erroneous. A comparison of the decree of April 15, 1902, with that of July 6, 1900, shows that they are in all essential particulars identical except as to the provision concerning the payment of interest on the $30,000, which was modified in accordance with the mandate of this court. In prescribing the manner of distribution the decree follows the views expressed in *Ingraham* v. *Mariner, supra,* using the language of this court in substance. The expressions "first," "second," "third" and "fourth" at the beginning of the distributive clauses in the decree are mere enumerations of payments to be made, and are not intended to give priority to any claim. The decree contemplates that all the items enumerated shall be paid in full if the proceeds of the sale shall afford sufficient funds, otherwise the losses shall be borne *pro rata.* The court committed no error in this particular.

The contention that Ingraham's executors should not be allowed to become purchasers at this sale is not well taken. The parties are placed upon an equality in this regard by the decree, both or either being allowed to become purchasers if they overbid other buyers. The decree of July 6, 1900, contained the same provision, and the question is *res judicata* and is not open for review in this court.

The decree of April 15, 1902, made pursuant to the mandate of this court, and the decree of March 22, 1905, ordering the master to proceed with the sale of the land in question, are affirmed.          *Decrees affirmed.*