## Harriette A. Ingraham et al., Appellees, v. L. W. Mariner et al., Executors, et al., Appellants.

### Gen. No. 15,952.

APPEALS AND ERRORS—*what not res judicata by former appeal.*
*Held,* that a decree entered in this case was in conformity with the rulings upon review and that mere expressions in opinions did not necessarily render *res judicata* a particular question but that whether the question has been rendered *res judicata* by a former opinion must be determined by an examination of the issues presented and determined.

Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 25, 1911. Rehearing denied November 8, 1911.

SCOTT, BANCROFT & STEPHENS, for appellants.

E. A. & W. K. OTIS and DAVID FALES, for appellees.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The record in this case discloses that this is its fourth appearance in a court of review. It would serve no useful purpose to here recite the facts in detail, or to make a statement of all the proceedings heretofore had, and we refer to the following former opinions in the case for a complete understanding of the same and of the questions there involved. Ingraham v. Mariner, 194 Ill. 269; Mariner v. Ingraham, 127 Ill. App. 542; Same v. Same, 127 Ill. App. 550; Same v. Same, 230 Ill. 130.

In pursuance of the decree of March 22, 1905, reviewed in 127 Ill. App. 542 and 230 Ill. 130, the master, on October 1, 1908, sold the premises involved to Harriette A. Ingraham, Henry V. Freeman and John F. Gilchrist, executors and trustees under the last will and testament of Granville S. Ingraham, deceased, for

$95,000 in cash, and said master's report of said sale was approved October 30, 1908.

On November 20, 1908, the said executors and trustees, complainants below, moved the court to refer the cause to the master to take an account between said complainants and the defendants, Ephraim Mariner, J. Platt Underwood and John M. Gartside, of. the share or proportion, if any, which each of them is entitled to receive out of the proceeds of sale of the premises involved, and of the indebtedness due from either of said parties to the other with respect to the contract set up in the bill of complaint, and report the same, together with his findings thereon. To the allowance of said motion the defendants, Mariner and Underwood, interposed numerous specific objections, whereupon, on May 24, 1909, the chancellor entered a decree, as follows:

"This cause coming on to be heard this day on the motion of the complainant, filed herein on the 20th of November, 1908, and the objection of the said defendants, Mariner and Underwood, thereto.

"And it appearing to the court that there are no profits from the proceeds of sale of the land described in the Decree herein entered April 15, 1902, to be distributed to the complainants or to the said defendants, Ephraim Mariner, J. Platt Underwood and John M. Gartside, or either thereof, but that a loss has resulted from the sale of said land October 1, 1908, by Horatio L. Wait, Esq., Master in Chancery of this court, made herein, which sale was heretofore confirmed;

"It is ordered that said objections be overruled and that this cause be referred to Thomas Taylor, Jr., Esq., one of the Masters in Chancery of this court, to take account between the complainants and the defendants, Ephraim Mariner, J. Platt Underwood and John M. Gartside, of the share or proportion which each of them is entitled to receive out of the proceeds of sale of the lands and premises in this cause; also of the indebtedness due from either of said parties

complainant or defendant to the other, with respect to the contract set up and described in the bill of complaint in this cause.

"In taking said account, the said Master is hereby directed to proceed upon the basis that it has been found and decreed by the Court in this cause that the capital of the said joint enterprise consisted of $100,000, of which Granville S. Ingraham, deceased, contributed $70,000, and Andrew J. Cooper contributed $30,000; that the complainants are the executors and trustees of the estate of said Granville S. Ingraham, now deceased, and have succeeded to his rights and liabilities; and that said Ephraim Mariner and J. Platt Underwood are the assignees, and have succeeded to the rights and incurred the obligations of said Andrew J. Cooper under the original contract set out in the bill and the decrees in this cause; and that the said losses arising from said joint enterprise should be borne *pro rata* in proportion to the amount contributed by each of said parties; and he is instructed to make his report in accordance with the instructions embraced in this decree.

"It is further ordered that the proceeds of sale remaining in the hands of said Master Wait be held until the coming in of said report, and the further order of the court herein."

This appeal to reverse said decree is prosecuted by said Mariner and Underwood.

It is insisted that the decree here involved disturbs the rights of the parties as fixed by the former decrees; that is, that the chancellor in entering said decree relitigated matters which had become *res judicata* by the judgments of the Appellate and Supreme Courts in the former appeals and upon writs of error, in two particulars, viz.: First, wherein it was held upon a consideration of the decree of July 6, 1900, that the $30,000 was not a contribution by Cooper to the capital of the joint enterprise created by the contract of January 2, 1889; and second, wherein it was held upon a consideration of the decrees entered April 15, 1902, and

March 22, 1905, that the appellants were entitled to be paid out of any proceeds of a sale of the premises, the amount of the $30,000 encumbrance held by them thereon.

While some expressions employed by the writers of the opinions reported in 194 Ill. 269 and 127 Ill. App. 542 and 550, afford a measure of support to the foregoing insistence of appellants, we are of opinion that a consideration of the findings and adjudications, embodied in the decrees then before the Supreme and Appellate Courts, do not sustain such insistence.

The decree of July 6, 1900, is, in part, as follows:

"That by the terms of said contract it was the intention of the parties thereto that said Ingraham and said Cooper should enter into a joint enterprise in respect to the lands in question and above described, in which the land was valued at one hundred thousand ($100,000) dollars, for the purpose of capitalizing the same, that Ingraham's interest therein should be seventy thousand ($70,000) dollars and that said Cooper's interest therein upon the payment of said thirty thousand ($30,000) dollars unto said Ingraham should be the sum of thirty thousand dollars; that the land should be carried at the joint expense of the parties thereto until such time as both parties should agree upon an opportune time, which should be most advantageous to both parties, to sell the land; that Ingraham should furnish his note secured on the land as security for said thirty thousand ($30,000) dollars, but as between said Ingraham and said Cooper, he, the said Cooper, was to be liable for the payment of the money so borrowed, and that said Cooper should keep the interest on the loan paid under penalty of forfeiting his interest and that the principal of said loan might be carried until the sale of the land should be made when the principal of said thirty thousand ($30,000) dollars should be paid out of said Cooper's share of the proceeds; that the expenses of carrying said land incident thereto could be paid by either party; that the expenses of carrying said loan of

thirty thousand ($30,000) dollars should be borne by said Cooper or his assigns.

"The court further finds that upon the sale of said land and for the purpose of distribution there should be added to the principal of seventy thousand ($70,000) dollars so contributed by said Ingraham, and to the principal of said thirty thousand (30,000) dollars so contributed by said Cooper, all of the expenses incurred in the carrying of said land including taxes and special assessments and attorneys' fees, and all other incidental expenses connected therewith, with interest thereon at the rate of six per cent. per annum and also interest at the rate of six per cent. per annum upon the seventy thousand (70,000) dollars of capital so contributed by said Ingraham down to the date of such sale and all interest paid upon said loan of thirty thousand (30,000) dollars by said Cooper and the said Mariner, Underwood and Gartside until the same was taken up by said Mariner, Underwood and Gartside or one or more of them, and at the rate of six per cent. per annum thereafter down to the date of sale, all of which being added together should constitute the amount of the principal at the date of such sale.

"The court further finds that upon the sale of the land and from the proceeds thereof, should be deducted the principal so constituted as above, including interest, taxes and incidental expenditures above referred to, and that the remainder thereof should be profits, and should be divided equally between the said Ingraham or his executors, administrators or assigns, and the said Cooper or his executors, administrators or assigns, and that after the distribution of the profits so ascertained, the said principal should be divided as follows, namely, That there should be paid unto said Ingraham, his executors, administrators or assigns, the sum of seventy thousand (70,000) dollars with interest thereon at the rate of six per cent. per annum down to the date of sale; also all taxes, assessments or expenditures of any description incurred in the carrying of said property, and so contributed by the said Ingraham, his executors, administrators or assigns, with interest thereon at the rate

of six per cent. per annum down to the date of sale and that there should be paid unto the holder of the note for thirty thousand dollars so executed by said Ingraham, and if the same should be taken up by said Cooper, his executors, administrators or assigns, then there should be paid to the then owner out of the principal so constituted the sum of thirty thousand dollars together with all interest paid thereon by said Cooper or his assigns since the date thereof down to the time when it was taken up by said Mariner, Underwood or Gartside, and all accrued interest thereafter down to the date of sale, at six per cent. per annum, and also pay to them all taxes, special assessments or other incidental expenses connected with the carrying of said property with interest thereon at the rate of six per cent. per annum.

"That in case there should be no profits accruing out of said transaction, but should be a loss, then such loss should be borne *pro rata* according to the amount contributed by each of the parties."

The decree then directs a sale of the premises upon the terms therein specified, and after providing for the payment of the costs and expenses of the sale out of the proceeds, proceeds as follows:

"That the remainder of said proceeds he shall retain in his hands or pay to and turn over to the registry of this court as may be hereafter directed, and thereupon an account shall be taken under the order and direction of this court in accordance with the principles herein announced as to the respective rights of the parties hereto.

"And it is further ordered, adjudged and decreed that in case there should be no profits realized out of said enterprise, and in case there should not be sufficient to repay the capital, interest and expenditures aforesaid to the respective parties as herein announced, then each of the parties shall bear his *pro rata* share of losses incurred according to the contribution made by each."

Upon the appeal of the present appellees from this decree to the Supreme Court, said decree was affirmed

in all respects, except so far as it allowed the interest paid by Cooper and his assignees upon the $30,000 to be deducted from the proceeds of the sale, and in that respect the decree was reversed and the cause remanded to the Circuit Court with directions to so change and modify its decree. Ingraham v. Mariner, 194 Ill. 269.

In the course of the opinion, it was said:

"In order to determine the amount of the profits, which are to be divided between these parties, there should be deducted from the proceeds of the sale, *first,* the principal of the mortgage amounting to $30,000.00, and the current interest due thereon between the date of the maturity of the last installment of interest and the date of sale; *second,* $70,000.00, balance of the capital stock, and interest at six per cent. thereon from the date of the contract to the date of the sale; *third,* taxes and expenses paid by Ingraham, and interest at six per cent. thereon from the time of payment up to the day of sale; *fourth,* taxes and expenses, if any, paid by Cooper or his assignees, and interest thereon at six per cent. from the time of payment up to the date of sale. After deducting these amounts, the remainder will be the profits which are to be divided between the parties. The deductions so to be made, in order to reach the amount of the profits, are to be distributed as follows: to the holders of the note and mortgage, $30,000.00 and interest thereon since the maturity of the last installment of interest; to the estate of Ingraham, $70,000.00 and six per cent. interest thereon up to the date of sale; also to said estate the taxes and expenses paid by Ingraham or his representative and interest thereon up to the date of sale; and to the appellees, such taxes and expenses, with interest at six per cent., as they have paid out."

Upon the remandment of the cause to the Circuit Court, a decree was entered April 15, 1902, wherein appears precisely the same finding and adjudication, relative to the respective rights and interests of In-

graham and Cooper, under the contract, in the joint enterprise, as in the decree of July 6, 1900. In lieu of the direction in the latter decree for the payment of interest on the $30,000, out of the proceeds of a sale of the premises, in which respect only said decree was reversed, the decree of April 15, 1902, contains the following:

"And the Court further finds that it is provided in the trust deed securing said indebtedness of thirty thousand (30,000) dollars and in the several agreements for the extension of the payment thereof, that said thirty thousand ($30,000) dollars should bear interest at the rate of six per cent per annum, payable on the 2nd days of January and July in every year, until said principal sum is fully paid; and that the said complainants, Henry V. Freeman, Hariette A. Ingraham and John F. Gilchrist, and the said defendants, Ephraim Mariner, J. Platt Underwood and John M. Gartside, did covenant and agree with Darius N. Avery, then the holder of said indebtedness, that until said note of thirty thousand (30,000) dollars was fully paid, they would punctually pay the interest due and to become due thereon at the time and at the rate aforesaid.

"The court further finds that neither the said Andrew J. Cooper, nor the said Ephraim Mariner, J. Platt Underwood and John M. Gartside, his assignees, are entitled to be repaid the interest paid by them or either of them on said note secured by trust deed of thirty thousand (30,000) dollars, or any part thereof, out of the proceeds of sale of said lands and premises, or otherwise; and that the purchase of said note for thirty thousand (30,000) dollars by said Ephraim Mariner and J. Platt Underwood, so that they were not obliged to pay interest thereon to a third party, did not change or make any difference in the rights of the complainants in the original bill to have the proceeds of the sale of said lands protected from any deduction on account of such interest.

"And the Court further finds that upon the sale of the said land, and from the proceeds thereof, there shall be paid,—

First:   To Ephraim Mariner and J. Platt Under-
wood or the holders thereof, the principal of said note
secured by said mortgage, amounting to thirty thou-
sand (30,000) dollars, and the current interest only
accruing thereon, but not due, from the 2nd day of
January or of July, as the case may be, next preceding
the date of the sale of the lands.

"Second:   That there shall be paid unto the said
complainants in the original bill, as executors and
trustees of the estate of said Granville S. Ingraham
the sum of seventy thousand (70,000) dollars with
interest thereon at the rate of six per cent. per annum
from the 2nd day of January, 1889, down to the date
of such sale.

"Third:   That there shall be paid to the said com-
plainants in the original bill as executors and trustees
as aforesaid, all taxes, special assessments and ex-
penses of any description which have been paid by
the said Granville S. Ingraham in his lifetime, or by
the said complainants as executors and trustees of
his estate, since his death in respect to said lands and
premises and in carrying the same, since said 2nd day
of January, 1889, with interest at the rate of six per
cent. per annum upon the several amounts paid as
aforesaid, from the time of payment thereof up to the
date of sale.

"Fourth:   That there shall be paid to the said
Ephraim Mariner, J. Platt Underwood and John M.
Gartside, as the assignees of said Andrew J. Cooper,
all taxes, special assessments or expenses of any de-
scription paid or incurred by them in respect to said
lands and in carrying the same since the 2nd day of
January, 1889, the date of said contract, with interest
upon each of said payments at the rate of six per cent.
per annum from the date thereof up to the date of
sale.

"The Court further finds that the balance of said
proceeds of sale constitute the profits named in said
contract and are to be divided equally, and one-half
thereof shall be paid to the said complainants in the
original bill as the executors and trustees of said
Granville S. Ingraham and the other half shall be

paid to the said defendants Ephraim Mariner, J. Platt Underwood and John M. Gartside.''

Said decree also contains the direction:

''That in case there should be no profits accruing out of said transaction, but should be a loss, then such loss should be borne *pro rata* according to the amount contributed by each of the parties.''

By the latter decree the master was directed to make no sale thereunder, until the further order of the court.

On March 22, 1905, a decree was entered directing an immediate sale of the premises, which decree also modified the terms and conditions of such sale, as theretofore determined, as follows:

''It is further ordered by the court that in the event the respondents, Ephraim Mariner and J. Platt Underwood, who are the owners of the $30,000 encumbrance on said lands and premises, should become the purchaser at said sale they shall not be required to pay over to the said master at such sale the amount of the said encumbrance and that the said master be and he is hereby directed to accept from the said Ephraim Mariner and J. Platt Underwood their receipt for the said sum of $30,000 as part of the cash or deferred payments required to be made under the terms of said decree at a sale thereof.

''And in like manner the court further orders and decrees that in the event that the petitioners in this cause shall themselves become purchasers of said lands at such sale they shall not be required to pay to the said master a larger amount in cash than the amount of said $30,000 encumbrance on said lands held by the said respondents, Mariner and Underwood, and the costs of said sale; and the said master is hereby directed to receive and accept from the said petitioners in case they shall become the purchasers at said sale, their receipt for the amount which may be due and owing to them under the terms of said final decree or so much thereof as may be necessary, as part of the payment of the purchase money of said lands at such sale for said lands and premises. And in such event

the said master is directed to pay over the amount of said $30,000 encumbrance to said Mariner and Underwood upon the confirmation of said sale and execution and delivery by them of a release and satisfaction of the same.''

From this decree the present appellants prosecuted an appeal to the Appellate Court of the First District, where, at the October term, 1905, upon a consideration of said decree, the same was affirmed. 127 Ill. App. 542. Appellants also, at the same term, prosecuted their writ of error from said court to review the decree of April 15, 1902, which decree was also affirmed. 127 Ill. App. 550.

From the judgment of said Appellate Court, affirming the decree of March 22, 1905, appellants prosecuted their appeal to the Supreme Court, and also prosecuted their writ of error from said court to review the judgment of the Appellate Court, affirming the decree of April 15, 1902. The causes were consolidated in the Supreme Court, and upon a consideration thereof, the judgments of the Appellate Court were affirmed. 230 Ill. 130.

In the course of the opinion it was there said:

"It is alleged that the decree of April 15, 1902, is erroneous in prescribing the order of payment in making distribution; that the provision that the parties should bear any loss *pro rata,* and the order allowing appellees to become purchasers at the sale, are also erroneous. A comparison of the decree of April 15, 1902, with that of July 6, 1900, shows that they are in all essential particulars identical except as to the provision concerning the payment of interest on the $30,000, which was modified in accordance with the mandate of this court. In prescribing the manner of distribution the decree follows the views expressed in Ingraham v. Mariner, *supra,* using the language of this court in substance. The expressions, 'first,' 'second,' 'third' and 'fourth' at the beginning of the distribution clauses in the decree are mere enumerations of payments to be made, and are not intended

to give priority to any claim. The decree contemplates that all the items enumerated shall be paid in full if the proceeds of the sale shall afford sufficient funds, otherwise the losses shall be borne *pro rata*. The court committed no error in this particular.''

In view of the fact that the decrees entered July 6, 1900, and April 15, 1902, each contains a finding and adjudication construing the contract in question as establishing a joint enterprise with a capital of $100,000, wherein the interest of Ingraham should be $70,000 and the interest of Cooper should be $30,000, upon the payment by him of said sum to Ingraham; that as between Ingraham and Cooper the latter was to be liable for the payment of the money borrowed; that for the purposes of distribution of the proceeds of a sale of the land there should be added to the principal of $70,000, ''so contributed by said Ingraham,'' and to the principal of $30,000, ''so contributed by said Cooper,'' all of the expenses, etc.; that in case there should be no profits accruing out of said transaction, but should be a loss, then such loss should be borne *pro rata* according to the amount contributed by each of the parties; and in view of the further fact that such findings and adjudications have been wholly affirmed by the Supreme Court, it must be held that the questions are *res judicata*.

True, the decree of March 22, 1905, provides that, if the appellants should become the purchasers of the premises at the sale therein ordered, they should not be required to pay to the master the amount of the encumbrance of $30,000 held by them, and the master was therein directed to accept from them their receipt for said amount as part of the purchase money; and also provides that if appellees should become the purchasers they should not be required to pay to the master a larger amount in cash than $30,000, the encumbrance on said land held by appellants, together with the costs of sale, and the master was directed to accept from appellees their receipt for the amount

which may be due and owing to them as part of the purchase money, and to pay to appellants the amount of their encumbrance upon the confirmation of the sale and execution and delivery by them of a release and satisfaction thereof; but such provisions and directions are not necessarily inconsistent with and exclusive of the provisions and directions contained in the prior decrees of July 6, 1900, and April 15, 1902. The decree of March 22, 1905, does not assume to construe the rights and interests of the parties under the contract, or to determine the extent of the liability of the parties, in the event that a loss should accrue out of the transaction. Those functions were fully performed by the prior decrees, and all the findings and adjudications in the several decrees involved, in so far as they have been considered and sustained by the court of last resort, must be harmonized, if possible. It is apparent that the decree of March 22, 1905, was predicated upon the assumption that a sale of the premises would realize an amount sufficient to pay all the claims in full, otherwise, its provisions are inconsistent with those contained in the prior decrees.

The instant decree was entered after it became apparent from the master's report of sale that a large loss would accrue out of the transaction, and it therefore became necessary to provide for the apportionment of such loss between the parties in interest.

As heretofore observed, the decrees of 1900 and 1902 provide that the loss, if any, shall be borne *pro rata,* according to the amount contributed by each of the parties, and in Mariner v. Ingraham, 230 Ill. 130, it was said:

"The decree contemplates that all the items enumerated shall be paid in full, if the proceeds of the sale shall afford sufficient funds, otherwise the losses shall be borne *pro rata.*"

How is the *pro rata* in question to be ascertained? Obviously, unless force and effect be given to the findings in the decrees that Ingraham "contributed"

$70,000 and Cooper "contributed" $30,000 to the joint enterprise, there is no basis for determining the *pro rata*. No other measure, whereby the liability of each of the parties to share in the losses, exists in or is ascertainable from the record.

Each of the decrees of 1900 and 1902 contains a finding to the effect that, prior to the death of Ingraham, Cooper sold and transferred all his interest in and to the contract to Mariner, Underwood and Gartside; that they continue to hold such interest and are entitled to all the right and interest which Cooper would have been entitled to had he made no assignment. As between Ingraham and Cooper, the latter was liable, under the contract for the payment of the $30,000 encumbrance, and as we understand it, such liability of Cooper induced the finding in the decrees of 1900 and 1902 that he had "contributed" $30,000 to the joint enterprise. It does not appear that the assignees of Cooper under the contract did not assume his liabilities, when they acquired his rights and interests therein. In Mariner v. Ingraham, 230 Ill. 130, it was said: "On June 12, 1901, Cooper transferred his interest in the aforesaid contract to Ephraim Mariner and J. Platt Underwood, appellants herein, who thereby succeeded to his rights and incurred his obligations under the original contract."

Upon the record, as made, we perceive no error in the decree of May 24, 1909, and the same will be affirmed.

*Decree affirmed.*